WINDHAM,
*February,*
1832.

## THE TOWN OF BROOKLINE *vs.* THE TOWN OF WESTMINSTER.

*Assumpsit* lies by a town, erecting a bridge under an order of court made on their petition, against any town, assessed by such order, in a portion of the expense of erecting such bridge.

Notice of the expenditure in erecting such bridge should be given, not to the town clerk, but to the selectmen, and payment be demanded of them.

The order of the county court, for erecting a bridge and apportioning the expense upon several towns, is conclusive upon the towns, cited before them on the petition, if the case is within their jurisdiction, and their order within the powers given them by statute.

For the purpose of such jurisdiction, a river is to be considered as running between two towns, both when it is literally so, one bounding on each side, and when both are bounded together upon one side, and when neither can erect the bridge without extending it into the other town.

This action was brought up from the county court upon the following bill of exceptions :

" This was an action of *assumpsit*, brought by the town of *Brookline*, to recover of the defendant town the expense of erecting a certain bridge across West river, on the road from Newfane Court house to the former residence of one Ormsbee, in *Brookline.* The defendants pleaded the *general issue*, and the declaration and pleadings are referred to as part of the case. The plaintiffs offered in evidence, to support the issue on their part, attested copies of the records and proceedings of Windham county court, marked A, which are made a part of the case. To the admission of which the defendants objected ; but the objection was overruled by the court, and the testimony admitted. These records showed the order of the county court for the erection of said bridge. The plaintiff also offered parol testimony tending to prove the erection of the bridge by, and at the expense of, the town of *Brookline* before the bringing of this action : to which the defendants objected, on the ground, that the proceedings of the town of

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

*Brookline* ought to be proved by their records : but this objection was overruled and the testimony admitted.  The plaintiffs then gave in evidence testimony, tending to prove, that the expense of erecting and completing the bridge amounted to $1683,05 ; and also proved, that the items of expense were ascertained, and a bill of particulars made out, as early as the month of April, 1828. He also gave in evidence parol testimony, tending to prove, that before the commencement of this action, their agent made inquiry at *Westminster* of respectable inhabitants of said town, and learning from them that E. T. Cone was first select man of said town, and had acted as such, and also being told the same thing by Cone himself, delivered to said Cone the paper marked B, and demanded of him payment of the sum therein stated, as the portion of said town of the expense of building the bridge. To which testimony the defendants objected, on the ground, that the fact of said Cone's being select man ought to be proved by the record ; and that the select men were not proper persons to whom to deliver notice, and that a copy of the items, or a bill of particulars, ought to have been furnished said town. All which objections were overruled by the court, and the testimony went to the jury.  The defendants also contended, and prayed the court so to instruct the jury, that the plaintiffs, in support of their issue, ought to prove that West-River ran between two towns ; that there was a road crossing the same, at the place of location of said bridge, at the time of location thereof.  But the court refused so to do, and decided that all questions, relating to the proceedings contained in the paper marked A, must be considered as proved thereby, until the said proceedings were reversed by some court of competent jurisdiction.  The defendants then offered testimony, tending to prove, that the said river did not run between two towns, and that there was no road at the place of location of said bridge : which testimony was objected to by the plaintiffs, and, for the reason just stated, rejected by the court ; and a verdict passed for the plaintiffs, under the charge of the court, to recover the amount demanded in said paper marked B, and interest thereon from the time of said demand. To which charge and decisions the defendants excepted."

" And now, after verdict, and before judgement, the defendants move, that the judgement on said verdict be arrested, because they say that the plaintiffs' declaration is insufficient, and that the matters and things therein contained are not sufficient in law, whereby judgement can be duly rendered on the same.

By *Bradley*, their att'y and agent."

The motion in arrest being overruled, the defendants excepted to the decision overruling the same, and prayed that the case might be carried up to the Supreme Court ; which was ordered accordingly.

The declaration and papers marked A and B are sufficiently described in the opinion of the Court, and need not be recited here.

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

*Mr. Bradley, for the defendants.*—In this case the defendants contend, that the proceedings, on which the action is founded, being those of a special and circumscribed jurisdiction, and not according to the course of the common law, are to be taken strictly; and, if sufficient does not appear to have been averred to bring them within the jurisdiction of the committee, or county court, they shall be intended to be without that jurisdiction.—3 *Salk.* 216; *Cowp.* 523, *Hartly* vs. *Hooker;* 2 *Wils.* 16, *Waldeck* vs. *Cooper;* 6 *Mod.* 224; 7 *Ib.* 103, *Reignol* vs. *Taylor;* 1 *Saund.* 73; 5 *Mod.* 78, *Cudmore* vs. *Tripe;* 4 *Cranch,* 93; 5 *Ib.* 173. And it is no argument to say, that the statute of 1797 makes the proceedings conclusive, none being intended thereby, but such as appear on their face to be conformable to the statute.

In this instance two things were, by that statute, [which was made for the relief of the towns bounded on Onion River at the banks respectively, and leaving the river between them] necessary to give the jurisdiction : 1. That the river should be between two towns. 2. That the bridge should be upon a road crossing it at the time. And both these facts have been averred and proved. Whereas, in the present case, no fact appears of any road, at the time, where the bridge was located, nor does it appear, that the river was between two towns : for the statement, that " the river was the boundary line of two towns," does not necessarily, or even probably, imply, that the river itself, or any part of it, lay, or ran, between two towns, as a mutual boundary at one edge of the river, leaving the whole river in one town, would satisfy this expression. That such was actually the case, appears by the statute of 1820, *chap.* 33, *p.* 41, annexing a part of Newfane to the town of *Brookline;* and this being not only published as a public act, but the laws establishing the boundaries of towns and counties being, in themselves, public acts, the court is bound to take notice of it.—10 *Mass. Rep.* 91. And, if there was any doubt on this subject, the defendants offered to remove it, by proving, that such was the state of the river and the road ; that both the facts were with the defendants. It is contended, then, that, on one or the other ground, the motion in arrest, or the one for the rejection of the proceedings, ought to have prevailed : and it is submitted, whether, in cases of this kind, such copies can be admitted, no provision being made therefor ; and also, whether the original proceedings ought not to have been produced. The order made was for the payment of the several proportions to the

Windham,
February,
1832.

Brookline
vs.
Westminster.

town of *Brookline ;* and the plaintiffs were permitted to show, by *viva voce* testimony, that the bridge was built by the town of *Brookline,* and at the expense of that town, without notice or application for building to the other towns; whereas some proceedings of that town in relation to said bridge ought to have been shown by the books or records of the town.—7 *Mass. Rep.* 102; 8 *Ib.* 292 ; 10 *Ib.* 397. Be this as it may, it is apparent, that *Brookline* could claim nothing, by suit, of *Westminster,* until notice of the expense and demand of payment. And it is to be inquired what such notice and demand ought to be ? The defendants contend, that it ought to be in writing, (6 *Mass. Rep.* 501 ;) to be so specific and particular, that the defendants might know for what the claim was made, and might have the means, by knowing the items, of judging of its fairness ; because, as to so much, as they claim of the defendants, the plaintiffs must have considered themselves acting as the agents of the defendants ; and that it, also, ought to have been made in the proper way, which, it is contended, is, by leaving it with the town clerk : but that, if it could have been left with a selectman, it was incumbent on plaintiffs to prove him such on trial by all the evidence the circumstances would admit, which was not done. It is also submitted how far assumpsit is the proper remedy.

*Mr. Kellogg, for the plaintiffs.*—I. It is objected by the defendants, that the court erred in admitting *parol testimony* to prove the erection of the bridge by, and at the expense of, the town of *Brookline.*

1. The erection of the bridge could be proved only by *parol.* The doings of the agents, or persons employed in the building of the bridge, could be proved only by *parol.* They are not the proper subjects of record, and, consequently, if their proceedings and expenditures were entered upon the records, copies would not be competent evidence to prove the same in court. The only fact, then, which could be legally proved by the records, is the appointment of the agents or committee to superintend the building of the bridge. But can this be material ? The only liability, upon the defendant town, is by force of the judgement of the county court, establishing the bridge, and settling the proportion of the expense to be born by the respective towns. The liability under that judgement is, to pay to the town of *Brookline* four twentieths of the expense of building ; and there is no liability to any other town. The bridge is erected ; and it is not pretended, that any

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

part of the expense was borne by *Westminster*. 2. But if the Court should be of opinion, that the fact of the appointment of a committee should be proved by the records, still, if they are now satisfied that the fact exists, and that it is an uncontroverted fact, and that opening the trial for this reason would avail the party nothing, will they grant a new trial ?

II. It is insisted by the defendant, that the plaintiff should have proved by the records, that E. T. Cone, to whom the bill of expenditures was delivered, and of whom payment was demanded, was a select man of *Westminster ;* and further,that the select men are not the proper persons, to whom the notice should have been delivered.

1. Cone declaring himself one of the select men, and acting as such, and being recognised by the people of *Westminster* as such, is sufficient evidence of the fact, so far as the public are concerned.—3 *Johns. Rep.* 426 ; *Cowen's Justice*, 572 ; 2 *Camp. R.* 131 ; 12 *Johns. Rep.* 296 ; 3 *Camp.* 433. 2. The select men are the proper persons, to whom the notice should be given. They have, by statute, the general management of the affairs of the towns, and particularly all the prudential concerns. To whom could notice with more propriety be given ? In all matters relating to the poor, the statute requires notice to the overseers of the poor : and why ? Because the statute has assigned to them that branch of business. All duties and business devolving upon towns, and not particularly assigned to others, it is believed, devolve upon the select men as the general agents and guardians of the town. 3. But it is believed that no notice in this case, prior to the commencement of the suit, was necessary, the statute not requiring any.—1 *Chitty*, 320.

III. It is insisted by the defendants, that the plaintiffs ought to have proved, that West-River ran between two towns, and that there was a road crossing the same at the location of said bridge.

1. Those facts were settled by the judgement establishing the bridge ; and the facts thus found and established cannot be controverted in this collateral way. 2. The judgement has never been reversed ; and every fact found by the judgement, is conclusive upon the parties, while it remains in force. 3. The judgement of a court of competent jurisdiction cannot be collaterally impeached ; it must be set aside either by an appeal, writ of error, or petition for a new trial.—6 *Wheat. Rep.* 109 ; 2 *Gall. Rep.* 216 ; 13 *Johns. Rep.* 141, *Hoyt* vs. *Gelston* ; 4 *Day*, 221, *Goodrich* vs. *Thompson ;* 1 *do.* 170, *Bush* vs. *Sheldon*; 2 *do.*

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

305, *Rockwell* vs. *Sheldon*; 1 *Con. Rep.* 7, *Canaan* vs. *Greenwood Turnpike Co.*; *Peak's Rep.* 59; 1 *Salk.* 290; 3 *Salk.* 492.

As to the motion in arrest—all defects, which can only be taken advantage of by special demurrer, are cured by verdict.—1 *Sw. Dig.* 776. If it appears from the declaration, that the plaintiff has a cause of action, but has set it forth in a defective manner, it will be aided by verdict.—1 *Term. Rep.* 145; 1 *Sw. Dig. ut supra.*

HUTCHINSON, C. J., pronounced the opinion of the Court, as follows :—This is an action of *assumpsit*, brought to recover four twentieths of the monies, expended by the town of *Brookline*, in erecting a bridge across West-River, between *Brookline* and New-Fane. The plaintiffs set forth in their declaration, the particulars of their proceedings before the county court, which, they contend, entitled them to recover. They declare, that the inhabitants of said town of *Brookline* had petitioned the county court, by petition in writing, &c., and stating therein, that there was a public road leading from the county buildings in said New-Fane, across West-River, at or near the fording place, known by the name of Flint's fording, to the dwelling house of Benjamin Ormsbee, in said *Brookline*; and that the said West-River, where the said public road crosses the same, is the boundary line between the said town of *Brookline*, and New-Fane; and that it was necessary, not only for the convenience and accommodation of the said towns of *Brookline* and New-Fane, but for the public generally, that a bridge should be erected across the said West-River, at or near where the said public road crosses the same, and that the said town of *Brookline* and New-Fane, had attempted to agree upon the time and place for erecting said bridge, and also upon the proportion, which each of said towns ought to pay towards the expense of building said bridge, but had failed to agree upon the same; and that the towns of *Westminster* and Putney, in said county of Windham, they being towns adjoining said town of *Brookline*, would be particularly benefited by the erection of said bridge, and ought to pay a proportion of the expense of building the same; and praying for the appointment of a disinterested and judicious committee, to view the premises, to designate the place where the said bridge should be erected, and determine what proportion of said expense each of said four towns ought to pay : and further set forth a regular citation to, and ser-

Windham,
*February,*
1832.
───────
Brookline
*vs.*
Westminster.

vice upon, the said four towns, citing them to appear before said county court, and show cause against the granting of said petition. And further set forth a regular proceeding before said court on said petition, the appointment of a committee, their report to said court, objections to said report, and the acceptance of the same, and the order of said court for the erection of said bridge, and assessing upon said town of *Westminster*, as their portion of the expense of erecting said bridge, the same rate now demanded in this suit : and further, that said *Brookline* had erected said bridge, and given notice to said *Westminster* of the expense, and demanded payment of their portion of the same.    This statement drawn from the papers referred to, render intelligible the points named in the exceptions.    These exceptions, and also a motion in arrest, that was overruled in the county court, have now been argued, and we have them under consideration.  This motion in arrest depends upon the question, what force there is in said order of the county court for the erection of said bridge, and apportioning the expense.   If that order is binding upon the parties, the declaration is good ; otherwise, not ; for it is particularly described in the declaration as the foundation of the action.

The case shows an objection raised to the parol proof of the doings of the town of *Brookline* in erecting the bridge.    It is urged, that record proof should have been adduced.    We see no reason, why the proceedings and order of the county court do not form record evidence of the doings of the town thus far.    That record sets forth, that the inhabitants of the town petitioned, &c. As no objection appears to have been taken on the hearing of that petition, to require proof how the said inhabitants acted, whether at a meeting regularly warned for that purpose or not, all thus far must be presumed regular.    The actual erection of the bridge could only be proved by parol.    And whether the town had paid their workmen for such erection, or had contracted by vote at some meeting, duly warned for that purpose; or whether the select men, or other inhabitants stood personally holden, in behalf of the town, to those workmen, is what concerns them rather than the town of *Westminster.*   If too large a sum was charged upon *Westminster*, either by the folly or extravagance of *Brookline*, the objection to that might be raised in defence of this action.  But the case shows no dispute about that.    This objection cannot avail.

We also overrule the objection to the proof adduced, to show, that Cone was selectman of *Westminster*, when notice was given him of this claim, and payment demanded.    The proof was rather

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

light.    He was reputed, and professed, to be selectman, and acted as such in receiving the notice.    Nothing was wanting, but further proof of his acting in that office on other occasions.    But it seems, that the man, who went to give notice, enquired of some of the inhabitants of *Westminster* who was their first select man ? and was informed that it was Mr. Cone, and he found him, and asked him if he was such ? and received an affirmative answer.    It would have been so easy for either party to have saved the trouble of the present argument, upon this point, by producing a copy of the record, showing who were selectmen at that ime, it is rather to be wondered at, that it was not done.    This objection bears too lightly upon the justice of the case, to require a new trial, under such circumstances.    We consider the notice was correctly given to the select men, and the town clerk was not the person to receive such notice.    The select men have, by statute, the care of the prudential affairs of the town.    They were the persons, who should decide, whether payment should be made, or a suit defended, or whether they would warn a town meeting, and refer the subject to the inhabitants when together.    No such powers are given to the town clerk ; and there seems no reason for giving him the notice, unless it be the presumption, that he would carefully communicate the same to the select men.

The principal point in the case, seems to be what relates to the validity of the order of the county court, made on the petition of the inhabitants of *Brookline*, and the extent, to which it is binding upon the parties in this action.    And there can be no doubt of its binding force, so far as it extends, if the court that made it, had jurisdiction and power to make such an order, and had the subject regularly before them.

But the defendants contend, that West river was not between New-Fane and *Brookline*, in such a sense as to bring the case within that statute, which authorizes the court to assess other towns, benefited, with any part of the expense of erecting the bridge.    This objection is, that the whole river does not lie between the two towns, but the northeastwardly edge of the river is the boundary line.    On examining the statute, which set oft to *Brookline* a portion of the township of New-Fane, we find the boundary to be as above mentioned ; so that the whole river, at least in low water, is in New-Fane.    It is contended, that the statute in question was made with a special reference to the towns lying upon Onion river, neither of which includes the river, according to charter boundaries.    It will be of no use for this Court to

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

conjecture what particular cases the legislature had in view, when they enacted the provision, that, " when a river runs between two towns, they shall jointly erect and keep in repair all necessary bridges : and other towns, particularly benefited by such bridge or bridges, may be assessed, by the county court, with a portion of the expense." We must give a construction to the statute in reference to its plain import, and the cases, that come equally within its spirit and meaning.   When a river runs between two towns in the sense that Onion river does, neither town can erect a bridge across it, without placing some part of it in the other town.   The travellers literally go out of one town into the other, by crossing such bridge.   In this respect, there is no difference, whether the river is in neither town, as Onion river, or is all in one town, as West-River is in New-Fane.   New-Fane may erect a bridge to the line of *Brookline*; and it cannot be kept there through any flood ; nor could it admit of travelling across it while there, without being extended many feet, if not some rods, into *Brookline*. The two towns must unite in erecting the bridge, or there will be none erected.   This river runs sufficiently between the two towns to give the county court jurisdiction over the subject matter of the petition of the inhabitants of *Brookline*, upon which they acted, in making the order in question.

It is further urged, as an appendage to this objection, that the order does not place the bridge where there was any road at the time, nor within the space described in the petition.   The petition prays for a bridge to be erected at or near a certain ford-way. It is said, this is ninety rods further up the river than that ford-way ; and so it appears by the record of the committee's report. The fact, also, appears, that there was a road on each side of the river, and pretty near the river too, as far up, as where the bridge was located ; and no very safe and convenient place for a bridge, nearer said ford-way.   Now, the question arises, was this bridge located at, or near, said ford-way, within the meaning of *said pe-tition*, and within the object contemplated by the statute, to provide a bridge to accommodate the road, which crosses the river at said ford-way ?   Upon this question, it is evident, no statute should regulate the erection of bridges in such manner, as to compel their erection exactly upon an existing road, whether such bridge could be kept there or not.   There would be some power to locate the bridge in a safe and convenient place, if such can be found so near as to accommodate the travel upon such road.   A careful examination of the statutes upon this subject, shows, that the le-

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

gislature were not wholly unmindful of the importance of such a provision. Although the beginning of the fourteenth section (see *page* 432,) speaks only of a case where a bridge becomes necessary upon a public road across any river &c, ; yet it enacts, that the committee must ascertain and report whether such bridge is necessary; and also at what place the same ought to be erected. This would be without meaning, if the legislature still intended that the bridge should, at all events, be placed exactly where the road crossed the stream. If the committee had a right to fix any other place for the bridge, than where the road crosses the river, their having done so in this case, and the court, which alone could act upon the subject, having confirmed their location, that is conclusive upon the parties, whether the committee acted judiciously or not. But we hear no complaint against the prudence of the location, if the committee kept within their powers.

Other difficulties have been urged, more embarrassing to the Court, than those now disposed of. It is urged that nothing in the statute, or in the order of the court, authorized the town of *Brookline* to make the whole bridge, and then recover of other towns their proportion of the expense : but each town must be compelled by indictment to perform its duty, enjoined by the order of court. This objection is somewhat imposing ; and yet, if this prevail, the other provisions of the statute can be of little use. That four different towns can be compelled to act in concert in erecting a bridge, is not a supposable case. There must be some way to compel them all to employ one common agency in building, or pay their money into one common fund for that purpose ; or one town must build the bridge, and receive of the other towns their several portions, or there will never be a bridge. The statute, providing that a fine, assessed, shall be expended by a committee in repairs, seems to provide for a common agency to expend the money, in the cases to which it relates. But this statute, in terms, applies only to the repairing of roads and bridges ; not to the erecting of bridges. And the statute of 1821 allows indictment for not making roads. It does not name the making of bridges. Indeed, the erecting of such bridges as need any attention, otherwise than as a part of the road, seems to be treated, in our statutes, as a separate branch of the road concerns. All the provisions of the statutes, that are not exclusively confined to this branch, use expressions suited alone to cases of individual towns. There is no expression in any of the statutes, which seems to indicate that the legislature thought of enforcing, by in-

WINDHAM,
February,
1832.

Brookline
vs.
Westminster.

dictment, the making of a bridge, when several towns were to do it. All the expressions used upon this branch are better adapted to the collection of the money from the towns that are petitioners. Not an expression is used, that supposes the towns, that are petitioners, are to perform any of the labor, or have any of the care in erecting the bridge. All the expressions used on the subject, seem to suppose that the towns will pay their proportion of the expense. Some of these will be noticed. One is as follows: " Such committee shall assess the towns, that will be particularly benefitted by the bridge, for the expense of building the same, in proportion to the benefits they will probably receive thereby." " And the court shall award and adjudge such costs, as to them shall appear just and equitable." There are two provisos: " Provided, that no town shall be liable to pay the expense of building such bridge, until after the expiration of one year from the rendition of such judgement as aforesaid." " Provided also, that none, but those notified, shall be assessed for the expense of building such bridge."

What, then, should be the mode of giving effect to this statute. If by indictment, it must be by the common law, or by an extension of the statute beyond its express provisions. One statute enforces a compliance with the order of the county court, by a penalty of five dollars a month upon the select men. A *scire facias* has been suggested as a remedy. But there has been no judgement against the town of *Westminster*, which ascertained and settled the amount they were holden to pay. The proportion only was settled by the order. The remedy must be such as will admit the amount to be litigated. That is a proper subject for a jury trial. The present action of assumpsit is as fit a remedy as any that has been mentioned. And it seems pertinent, that the town, complaining and procuring an order in their favor, against the other towns, should be assisted to obtain the effect of the decision in their favor. This must be the remedy, or there is none, but what is attended with as great or greater difficulties, than any presented in the present case.

As the statutes seem to have comprised within them an entire system with regard to roads and bridges, it is not a clear case that an indictment can be sustained, to compel an erection or repair in a case, where it is not prescribed in some of these statutes. The rule of strict construction in criminal prosecutions may be urged with much weight against such a proceeding. Whereas, in the civil remedy, sought by this action, the plaintiffs are entitled.

to a liberal construction in favor of their rights, when they have expended their money, and the object of the public is thereby effected. The defendants, also, are enjoying the very benefit of this expenditure, which was contemplated as a reason for assessing upon them a portion of the expense.

The judgement of the county court is affirmed.