CHITTENDEN<br>January,<br>1830.<br><br>Butler<br>vs.<br>Lowry.

———————⬚————————

TOWN OF ESSEX *vs.* TOWN OF MILTON.

CHITTENDEN.<br>January,<br>1830.

One town cannot, by virtue of the 4th section of the act respecting a legal settlement and providing for the poor, recover the expenses incurred in taking care of, and supporting, a sick pauper, unless there has been an actual removal of the pauper to the place where he or she was last legally settled, or unless such removal be prevented by the extreme sickness or death of the pauper.

*Quære,* whether there can be a recovery in any case unless the pauper be actually removed, or the removal is prevented by his death.

A constable of a town may execute a warrant of removal, if he can find the person or persons named in it in any part of the state.

This was an action of *assumpsit* brought to recover the expenses incurred by the town of Essex in the support and maintenance of one *Sally Mansfield,* a pauper, whose legal settlement was alleged to be in *Milton.* On the trial in the county court the plain-

C

CHITTENDEN
January,
1830.
————
Essex
vs.
Milton.

tiffs proved that *Almon Mansfield*, husband of the said *Sally*, was last legally settled in *Milton*, and was poor ; but it appeared that his father, *Amasa Mansfield*, who resided in *Essex*, was of sufficient ability to support the said *Almon* and his family. The plaintiffs next offered the proceedings of two justices on the complaint of *Caleb Richardson*, as overseer of the poor of said town of *Essex* ; to which the defendants objected, because it ought first to be shewn that *Caleb Richardson* was overseer of the poor at the time he made said complaint : which objection was overruled. The defendants then offered to show that the said *Caleb Richardson* was not a freeholder at the time of exhibiting said complaint, nor at any time previous thereto. But the court rejected the evidence. The defendants next offered to shew that there was but one overseer of the poor of the town of *Essex*, when in fact the law requires the appointment of two at least, and that they must act together in the execution of the duties of their office. But the court overruled this objection, and the complaint and proceedings were read in evidence. The plaintiffs proved that within thirty days from the making said order of removal a copy of the proceedings duly certified was lodged with the overseers of the poor of said town of *Milton*. A further objection to the record and proceedings of the justices was made, that it did not appear that the said *Sally Mansfield* was ordered to remove, unless by the general term, that the said *Almon* and family remove, &c. which objection was overruled. Further testimony was given as will appear by the following special verdict found by the jury.

" In this cause the jury find that the said *Almon Mansfield* had
" his last place of legal settlement in the town of *Milton* ; that his
" wife, *Sally Mansfield*, lived with the said *Almon* some years
" before the 26th day of October, 1826, and had her legal settle-
" ment in *Milton* ; that sometime during the year 1826, the
" said *Almon* and his wife *Sally* removed from *Milton* to *Essex*,
" but had gained no settlement in the town of *Essex* ; that on the
" 26th day of October, 1826, the said *Sally* fell into the fire and
" was burned ; that she was in need of relief, and that the town
" of *Essex* did furnish such relief as was necessary and proper ;
" that the overseers of the town of *Essex* made complaint to two
" justices, and such proceedings were had that on the 22nd day
" of November, 1826, the said justices made an order of removal ;
" that the said *Sally* could not be removed before the 26th day of
" February, 1827 ; that on that day she was removed on a bed
" placed in a sleigh without the knowledge of the overseers of the
" poor of *Essex* ; that she was taken to her friends in *Burlington* ;
" that in the month of April, 1827, she was brought back to

Chittenden
January,
1830.

Essex
vs.
Milton.

" Essex, where she remained from six to ten days, and then re-
" moved with her said husband to St. George ; that at the time
" she was carried from Essex, on the 26th day of February, she
" was still feeble and disabled, and ought not to have been remov-
" ed ; that in the month of April, when she was at Essex, she
" might have been removed to Milton ; that the said Almon and
" his wife returned to Essex in September, 1827, where they
" have ever since remained ; that the town of Essex gave a copy
" of the order of removal to one of the select men of Milton,
" and on the 30th June, 1827, made a demand in writing of the
" amount of their expenditures, which the town of Milton refused
" to pay.

" The jury find the amount of expenditures from the 26th Oc-
" tober, to November 22, 1826, the date of said order of removal,
" to be $105,77 ; and from that time to the 26th day of Februa-
" ry, 1827, the time when she was first removed, to be $198,05 ;
" and if the court should be of opinion that the plaintiff ought to
" recover the whole expenditures, then the jury say that the de-
" fendants did assume and promise as the plaintiffs have alleged,
" and find for them to recover of the said defendants the sum of
" 303 dollars 82 cents damages, and their cost. But if the
" court be of opinion that the plaintiffs have no right to recover for
" any expenditures before the order of removal, then the jury find
" for the plaintiffs to recover of the defendants $198,05 damages
" and their cost. But if the court should be of opinion that
" the plaintiffs ought not to recover, then the jury find that the
" defendants did not assume and promise—and find for them to
" recover their cost.                    A. Bostwick, foreman."

The county court rendered a judgment for the plaintiff, but for
how much does not appear. The defendants excepted, and the
cause was ordered to the Supreme Court, and was now heard on
all the points raised at the trial in the court below, and on the spe-
cial verdict found by the jury. Those parts, only, of the arguments
of counsel which relate to the point on which this Court finally
decided the case, are here inserted.

Argument for the plaintiffs.—The actual removal of the pau-
per is not a condition precedent to the right of recovery.

It is made the duty of every town to maintain their own poor.
(Stat. 370, sec. 2.) If any stranger shall come into any town and
become chargeable, the overseers may make complaint and cause
him to be removed. (Stat. 372, sec. 3.) But if he is sick and
cannot be removed, the overseers are compelled to support him
at the expense of the town where he has his settlement. (Stat.
370, sec. 4.) This seems to be a reasonable view of the subject ;
the several parts making one consistent whole, and no condition

CHITTENDEN nor limitation can be proposed without involving the whole in doubt
*January,*
1830.     and frequently requiring impossibilities. By no construction of
——        the 4th section can the removal of the pauper be a condition of
Essex     the recovery. It is not required by any legal nor grammatical con-
*vs.*
Milton.   struction of the act. The words " *and after the recovery of such*
*stranger, shall cause him or her to be removed,*" are merely di-
rectory to the overseers, and is a matter between them and the
plaintiff town. They have no bearing upon the rights nor duties
of the contending towns, and so far as regards them, are surplussage
and might be wholly stricken out. The statute requires the plain-
tiff town to support the pauper, and commands the defendant town
to pay the expense ; but it no where prescribes that the right to
recover shall be upon removal. The plaintiff town *may* remove,
but if they do not, their right of recovery is not abridged. The
right to remove is for the benefit of the plaintiff town, and it is not
to be supposed that the legislature would require as a condition
precedent the performance of an act which can be of no service
to defendant town. If the right of plaintiff town to recover depend-
ed upon removal, they might frequently lose it without any fault,
notwithstanding their utmost vigilance ; and the case before the
court is a striking exemplification. By the terms of the act the
justices are to order the pauper to remove by a day certain, and
it is only on his neglect to comply that a warrant can issue. It
would be a strange construction to deprive the plaintiffs of their
rights because the pauper had absconded. It may further be re-
marked that no warrant can issue until an order has been made,
and the justices, by the terms of the statute, are to examine the
pauper, and cases of extreme sickness or derangement of mind
may frequently render this impossible. If we are right in our
view of the subject, the subsequent return of the pauper in April
can make no difference. Indeed, it does not appear that plain-
tiff town knew of her return ; and besides, having once departed
from the custody of the town, it may be doubtful whether her re-
turn gave the town any power over her. Her return in Septem-
ber, 1827, was subsequent to the commencement of this suit.

*Argument for the defendants.*—The town of *Milton* is not hol-
den for this account, because the pauper has not been removed,
especially as she might have been removed a long time before de-
mand for payment was made. The pauper might have been re-
moved in April. The family removed to *St. George* in April,
but in September following returned to *Essex,* where they have re-

mained ever since.  From the wording of the statute it would
seem to be imperative upon the town making the order to remove
the pauper previous to any right to recover, unless he should die.
Now as the pauper has not been removed, and is yet living, we
contend that from the evident construction of the two sections
when read together, the settlement town cannot be made charge-
able, unless the pauper is brought to them, provided he is alive.
There is good reason for this.  If the town where the stranger
resides, choose to get rid of this expense, it is but reasonable they
should return the stranger to the settlement town, that they may
make their own calculations for future support.  It might be too,
that the pauper, through the intervention of friends, would indem-
nify the town against the charges already incurred.  There is no
relaxation of this rule, unless the pauper dies.  But if the court
should consider, that according to the equitable construction of
the statute, the settlement town ought to be made liable, provided
the pauper should abscond, so they could not remove him, still
there would be a difficulty in the plaintiffs' case on account of the
facts.  In April the pauper was in *Essex*, and might have been
removed.  In September following she returned to *Essex* from
*St. George*, where she has remained ever since.  Nor do we
believe the power of the order is lost as soon as the pauper leaves
the limits of the town in which it is made.  We see no reason
why the town of *Essex* could not have taken the pauper from the
town of *St. George*.  The order is that the pauper remove to his
former settlement, and unless he does so remove, the further order
is that a warrant issue.  One argument is that unless he previous-
ly remove to his settlement town, the officer holding the warrant
can take the pauper from any place and carry him to the place to
which he was ordered to be removed.  The second section of the
statute enforces this argument, in which it is made the duty of the
town in which the pauper resides, to take effectual measures to
prevent such poor from strolling into any other town.

The opinion of the Court was delivered by

WILLIAMS, J.—This action is brought under the provision of the
4th section of the act defining what shall be deemed and adjudged
a legal settlement, &c. to recover the amount paid by the town of
*Essex* for the support, maintenance and cure of a pauper, whose
legal settlement is alledged to be in the town of *Milton*, but who
was sick and disabled in the town of *Essex*.

On the trial of the action in the county court, a variety of objec-

CHITTENDEN tions were taken to the admission of the evidence offered, a spe-
January,
1830.      cial verdict was found and judgment rendered thereon for the
——————     plaintiffs,and the cause now comes before this Court for a re-exam-
Essex      ination of the several questions decided by the county court.
vs.
Milton.        It will not be necessary for us to decide all the questions which
are presented in the case, and which have been argued, as we are
all agreed that on one of the most material points presented by the
special verdict, the law was with the defendants, and judgment
should have been rendered accordingly.

It appears from the verdict that *Almon Mansfield* and his wife
*Sally*, living with him,had a legal settlement in the town of *Milton ;*
that in the year 1826, they went to the town of *Essex* to reside ;
that on the 26th of October, 1826, the said *Sally* fell into the fire,
was badly burnt, was in need of relief and support from the town,
and that such support was offered by the town of *Essex ;* that on
the 22nd day of November, 1826, on the complaint of the over-
seers of the poor of the town of *Essex*, two justices of the peace
in pursuance of the regulation of the statute, adjudged the settle-
ment of *Mansfield* to be in the town of *Milton*, and ordered him
to remove with his family and effects on or before the 27th day of
the same November.   The verdict further finds, that the said
*Sally Mansfield* could not be removed before the 26th day of
February, 1827, probably on account of the disability occasioned
by the accident before mentioned, although this is not distinctly
stated ; that on the 26th February, 1827, she was carried, without
the knowledge of the overseers of the poor of the town of *Essex*,
to her friends in *Burlington ;* that at this time she was sick and
disabled and ought not to have been removed ; that in the month
of April, in the same year,she came back to *Essex*, remained there
from six to eight days, then went with her husband to the town of
*St. George*, and in September, 1827, came back with her hus-
band to *Essex*, where they have ever since remained ; that in the
month of April, when she was in *Essex*, she might have been re-
moved without any danger, and nothing is said as to her situation
after September of that year.   The order of removal was unap-
pealed from.   The proper demand in writing, of the town of *Mil-
ton*, was made by the town of *Essex*, for the expenses incurred,
and a refusal on the part of *Milton* to pay the same is also
found.

The question in this case arises upon the construction of the
section of the statute before mentioned.   This action being foun-
ded on the statute which creates the right and gives the remedy,

CHITTENDEN
January,
1830.

Essex
vs.
Milton.

it is obvious that the plaintiffs cannot recover unless a case within its reasonble meaning and intent is made out. Independent of the positive enactment of the legislature on this subject, there are no principles either of equity or the common law which would cast the burden of the expenses incurred in support of the pauper in question on one of these contending towns more than on the other. But in the section of the statute above mentioned it has been provided, that in certain cases where one town is under the necessity of providing for the poor belonging to another, and the circumstances of the persons requiring relief and support as paupers are such that they cannot be sent to the place of their legal settlement, such town may recover the charges or expenses incured for the relief and maintenance of such poor persons. By the third section of the act, any two justices of the peace, on a complaint regularly made to them, may make an order that any persons chargeable, or likely to become chargeable, to the town where they reside, shall remove to the place of their legal settlement, and by their warrant may actually remove such persons with their families to the place of their settlement; and it may be observed that whatever costs or expenses may have been incurred by the town procuring this order to be made, either for the support or maintenance of the persons removed, or in making the enquiry and examination before the justices, or in executing the warrant of removal, must in ordinary cases be paid by such town without any remedy against the town where such persons are settled and to which they are removed. The only exception to this is found in the fourth section of the act which is a proviso to the third, and it provides for those cases where from sickness or other disability the order or warrant of removal cannot be executed. By this section it is made the duty of the overseers of the poor of the town which procures the order of removal, in case the order cannot be executed without endangering the life of the person to be removed, to provide for his or her support, maintenance and cure, and after recovery, to cause him or her to be removed, and all the expenses occasioned by such sickness, maintenance or cure, as well as the expenses of the removal, are to be paid by the town where the poor person is settled; and if the removal is prevented by the death of the pauper, the expenses before mentioned are then to be paid by the town where the settlement of the pauper is. From both these sections it is apparent that the legislature meant that no town should have a claim on another for any expenses arising from the support of a pauper where an order of removal could be

CHITTENDEN made and executed ; but if it could not be executed without en-
January,
1830. dangering the life of the persons who were the subject of it, then
Essex all the expenses arising after the order was made, and until it
vs. could be executed, or until the death of the pauper, should be
Milton. paid by the town where his or her settlement is adjudged to be ;
but no part of the expenses before the order was made can be re-
covered. This point was decided in the case of *Jamaica* vs.
*Windham*, and also in the case of the town of *Londondery* vs.
the town of *Windham*, 2d *Vt. Rep. p.* 149; and the case of *St.
Albans* vs. *Georgia*, in *Brayton, p.* 177, was overruled.

It is expressly made the duty of the overseers of the poor of
the town procuring an order of removal, the execution of which
has been delayed by the sickness or disability of the pauper, to
cause him to be removed after his recovery ; and when this is
done, or when it is prevented by the death of the pauper, then they
have a claim on the town where the settlement is found to be for
the repayment of the expenses incurred subsequent to the order.
It would seem that as the legislature have made provision for a
recovery of these expenses in two cases, and in two cases only,
*viz.* when there has been an actual removal, or where such remo-
val has been prevented by death, they did not intend to give a
right or a remedy in any other case ; and a part of the Court are
of opinion that there cannot be a recovery in any case under this
statute, unless the pauper has been actually removed to the place
of his settlement by his voluntary compliance with the order, or by
being carried thither by a warrant of removal, or unless this remo-
val was prevented by his death before the order could be executed,
and that such removal or death must be averred in the declaration.
A statute similar to ours exists in *Great Britain*, by which the
magistrates are empowered to suspend the execution of an order
of removal of sick or infirm persons until they are satisfied it can
be executed without danger to the persons who are the subjects of
the same, and the charges incurred by such suspension are to be
paid by the parish to which the removal is made, which are to be
levied by virtue of a warrant of distress issued by the justices.
The statute itself we have not had the opportunity of examining.
But we find that under this statute in the case of the *King* vs. *the
Inhabitants* of *Chagford, (4 Barn.* & *Ald.* 235,) it was decided
that the charges incurred during the suspension of an order of re-
moval were to be repaid by the parish to which the order was
made in two cases only, *viz.* the death or removal of the pauper ;
and when the pauper became irremoveable in consequence of

having a freehold estate descended to him, no order could be made for the payment of the charges.

CHITTENDEN
January,
1830.

Essex
vs.
Milton.

But the case before us does not require us to make a decision to this extent, and say that there can be a recovery only in case of the removal or death of the pauper. We all are agreed the statute contemplates that the pauper should be sent home to the place of his settlement if practicable, and although all the Court will not say that a case *may not* arise where a sufficient reason can be given, and alleged, for not making an actual removal, yet we are all of opinion there is no such reason existing in the present case. The pauper was carried to her friends in *Burlington* in Feb. 1827, although it might have been imprudent for the overseers of the poor of the town of *Essex* then to have executed the warrant of removal. In the month of April she was six or eight days in *Essex* : from that time until September she was in *St. George*, in the same county : she then returned to *Essex* where she has ever since remained, and no satisfactory reason is given why she was not removed during this time. I have no doubt the constable of *Essex* might have executed the warrant if he had found the persons named in it in any part of the state : but it seems no attempt was made to execute it, either during the time she remained with her husband in *Essex*, or with her friends in *Burlington*. Under these circumstances the Court are all agreed that the town of *Essex* cannot recover of the town of *Milton*, in this case.

Judgment must, therefore, be rendered on the verdict for the defendants.

*Adams* and *Bailey*, for plaintiffs.

*Allen* and *Whittemore*, for defendants.