## TOWN OF PAWLET *v.* TOWN OF SANDGATE.

The general rule is, that, for money accruing due under the provisions of a statute, the action of assumpsit may be supported, unless another remedy is expressly given.

Assumpsit will lie upon the statute,—Rev. St. c. 16, § 6,—which provides, that where an order of removal is made, and the pauper cannot be removed on account of sickness, the town procuring the order to be made shall support the pauper until he can be removed, and may recover the expenses of sickness and removal from the town to which the pauper was ordered to remove, if such town shall neglect to make payment for fifteen days after notice.

Parol testimony is admissible, upon the trial of such action, to prove that the pauper was sick at the time the order of removal was made, and continued so, so that he could not be removed without endangering life, until the time of actual removal.

The plaintiffs, in such action, may recover for all such charges and expenses, as they are legally bound to pay at the time of the commencement of the suit, notwithstanding the accounts may not then have been in fact paid.

And the plaintiffs may recover a reasonable compensation for the keeping and support of the pauper, notwithstanding it appears that an appeal was taken by the defendants from the order of removal, and that the pauper was maintained by an individual under a contract made with him by the plaintiffs, by which, if

Pawlet v. Sandgate.

that suit was determined against the plaintiffs, he was to have a reasonable compensation, to be determined by arbitration, but if it went in their favor, he was to receive, for his compensation, after this suit was terminated, such sum as the plaintiffs should recover of the defendants in this suit for that item.

In such action the plaintiffs are entitled to recover interest upon the amount of their claim after the expiration of fifteen days from the time the notice of their claim, required by the statute, was given to the defendants.

But the plaintiffs cannot recover, in such action, for services rendered by a physician, who attended upon the pauper during his sickness, under a contract with the plaintiffs, that, if the plaintiffs succeeded upon the appeal from the order of removal, he should have a reasonable compensation for his services, but that, if the plaintiffs failed in that suit, he should receive nothing, although it appear that the plaintiffs did succeed upon the appeal.

Nor can the plaintiffs recover for services rendered to the pauper by a physician, the amount of whose account was not stated, as a distinct item, in the notice of the claim given to the defendants, although it appears that the amount of that account was included in another item in the notice, but without any specific designation.

And where it appeared, that the plaintiffs had contracted with an individual to maintain their poor for one year, during the time which elapsed after the order and before the removal, and the person, at whose house the pauper was, contracted with that individual, that, if the appeal from the order of removal terminated against the plaintiffs, he would receive $2,50 per week for the support of the pauper, provided there should be no extraordinary expenses, it was held, that the plaintiffs, for that year, could only recover of the defendants the price thus agreed upon.

ASSUMPSIT, founded upon section six of chapter sixteen of the Revised Statutes.* The plaintiffs alleged, in their declaration, that

---

*By which it is enacted, that, " if such stranger, so ordered to remove, be sick or disabled, and cannot be removed without endangering life, the overseer shall provide for his maintenance, or cure, at the charge of such town; and, after the recovery of such stranger, shall cause him to be removed under said order:—And the town, in which he was last legally settled, shall repay all charges occasioned by the sickness, maintenance or cure of such stranger, and for his removal; and shall also repay all charges and expenses incurred, if he shall die before removal: And if the town, in which such stranger was last legally settled, shall not pay and satisfy all the charges and expenses, as aforesaid, within fifteen days after notice shall be given, in writing; the same may be recovered from such town, by an action to be brought in the name of the town making the disbursements.

one Elizabeth Draper, on the 24th day of November, 1841, whose legal settlement was in Sandgate, came to reside in Pawlet, and was taken dangerously sick there, so that she could not be removed; that an order of removal was made by two justices of the peace, pursuant to the statute, ordering the pauper to remove to Sandgate by the 26th day of November, 1841,—of which notice was duly given to Sandgate; that an appeal was taken by Sandgate from this order, and such proceedings were had thereon, that the same was affirmed at the September Adjourned Term, 1844, of the Supreme Court in Rutland county; that the pauper continued sick, and unable to be removed, until November 19, 1844, when she was removed to Sandgate; that during all this time she was supported and maintained, at great expense, by the town of Pawlet; and that notice thereof had been duly given to Sandgate, pursuant to the statute. The declaration contained also a second count in *indebitatus assumpsit* for work and labor, care and diligence, for goods, &c., sold and delivered, and the money counts. Plea, the general issue, and trial by jury, September Term, 1845,—WILLIAMS, Ch. J., presiding.

On trial it was admitted, that the settlement of the pauper was in Sandgate, and that the order of removal, the affirmance of the order and the written notice to the town of Sandgate were made and given, as alleged in the declaration.

The plaintiffs then offered parol testimony, tending to prove that the pauper, at the time the order of removal was made, and from that time until she was actually removed, was sick, so that she could not be removed without endangering her life. To this evidence the defendants objected; but it was admitted by the court. The plaintiffs also introduced evidence tending to prove, that they had necessarily employed several physicians to attend upon the pauper during her sickness; and they claimed to recover for the services of Dr. Ezra Edson. But it appeared, that Dr. Edson rendered his services under a contract, made with him by the plaintiffs, that, if the settlement of the pauper should be determined to be in Sandgate, he should receive a reasonable compensation for his services, but if it should be determined that her settlement was not in Sandgate, he should receive nothing for his services;—and the court decided, that the plaintiffs could not recover for the services so rendered. The plaintiffs also claimed to recover the amount of an account for

professional services rendered to the pauper by Dr. Edward Smith. But it appeared, that this account was not named specifically in the written notice given to the defendants, but was included in another item in the notice;— and the court held, that, for this reason, the plaintiffs were not entitled to recover for this account.

The plaintiffs also introduced evidence tending to prove, that they employed James Leach to take care of and provide for the pauper, during the period between the making of the order and the removal, under an agreement, that, if the suit in relation to the settlement of the pauper, then pending, should be decided against Pawlet, he would receive such sum for compensation, as might be adjudged reasonable by arbitrators; but that, if that suit should be decided in favor of Pawlet, then he should receive such sum as Pawlet might recover for him in this suit, after such recovery.

The physicians' bills and Leach's bill were presented on trial; but no portion of them, or of any other bills presented, had been paid by the plaintiffs.

The defendants gave evidence tending to prove, that one William Pierce contracted with the plaintiffs to keep all the paupers of the town, and to indemnify the town against all expense of supporting paupers, for one year from the 19th day of March, 1842, and that the said James Leach, who had contracted with the plaintiffs to support and take care of the pauper, Elizabeth Draper, agreed with Pierce, on the first day of June, 1842, that in case the settlement of the pauper should be adjudged not to be in Sandgate, he would charge Pierce only $2,50 per week for taking care of and supporting the pauper, provided there should be no extraordinary expenses incurred therein.

The defendants requested the court to charge the jury, that the plaintiffs could not recover for any of the bills presented by them, inasmuch as they had not been paid by the plaintiffs. But the court instructed the jury, that the plaintiffs were entitled to recover the amount of all such bills presented, as were necessarily and properly occasioned by the sickness, maintenance, cure and removal of the pauper, which the plaintiffs were, at the commencement of this suit, legally liable to pay; and that it was not necessary, that the plaintiffs should have actually paid said bills.

The defendants farther requested the court to charge the jury,

Pawlet *v.* Sandgate.

that the account of Leach could not, under the agreement proved by the plaintiffs, be recovered in this suit. But the court charged the jury, that the plaintiffs were, notwithstanding, at the commencement of this suit, legally liable to pay a reasonable compensation to Leach, and that they might recover in this suit for what they were holden to pay on that bill.

The plaintiffs requested the court to charge the jury, that the agreement made by Leach with Pierce did not affect the right of the plaintiffs to recover of the defendants a greater sum for the claim of Leach, than the rate of compensation which he had agreed to accept from Pierce ; and also, that the plaintiffs were entitled to recover interest upon the several bills embraced in their written notice to the defendants, from the time of the performance of the services and the incurring the expenses therein specified, until the time of trial. But the court instructed the jury, that the agreement made by Leach with Pierce limited the right of recovery of the plaintiffs for the services of Leach, during the whole year for which Pierce had contracted to keep the paupers of the town, to the sum of $2,50 per week, unless there was extraordinary expense incurred during that time. The court also charged the jury, that the plaintiffs were entitled to recover interest, upon such sums as the jury should allow them as principal, only from the expiration of fifteen days next after the giving of the written notice to the defendants, as above mentioned.

Verdict for plaintiffs. Exceptions by both parties.

After verdict the defendants filed a motion in arrest of judgment for the insufficency of the declaration ; but the court overruled the motion and rendered judgment upon the verdict for the plaintiffs ; to which decision the defendants also excepted.

*D. Roberts, Jr.,* for defendants.

I. Upon the motion in arrest, the defendant contends, that the action should be " a special action on the case upon the statute." *Middlebury* v. *Hubbardton,* 1 D. Ch. 205. *Indebitatus assumpsit* will not lie upon the 6th section of the pauper act. Ib. It lies upon the 12th section, by reason of the express words of that section. *Danville* v. *Putney,* 6 Vt. 512. Although " assumpsit may be supported for money, &c., accruing due under the provisions of

79

a statute," [1 Ch. Pl. 98,] yet it would seem to be in those cases, where " a right is liquidated by means of the statute," as in *Rann* v. *Green*, 2 Cowp. 474, where it is said, " when the *order* was made, the law raised an assumpsit." *See* Dougl. 10, n. 2, where a like opinion is stated with a " *perhaps*," &c.; and *King* v. *Toms*, Dougl. 401, where it is said (referring to *Rann* v. *Green*) " the plaintiff would *probably* have succeeded," &c. So in *Brookline* v. *Westminster*, 4 Vt. 224, the court being troubled to find any proper remedy, conclude that assumpsit was " as fit a remedy as any that had been mentioned."

II. As to the defendants' other exceptions;

1. The suit is to be in favor of the town *making the disbursements*, for *repayment* of charges, &c.,—language which implies a previous payment of charges by the plaintiffs, for money paid to the defendants' use; they must show an expenditure of cash, or its equivalent. *Burnap* v. *Partridge*, 3 Vt. 144.

2. The first contingency contemplated in the agreement between Leach and the plaintiffs, to wit, that the pauper might fall upon Pawlet, has not happened ; of course, the provision applicable thereto, to wit, that Leach should have a reasonable compensation, &c., is not applicable here ; but the provision here applicable is, that Leach shall have " such sum, as Pawlet may recover for him in this suit, and *after* such recovery." By the very terms of this agreement, therefore, the liability of Pawlet to Leach does not precede, but follows, a recovery here. If the inquiry be made, how, then, shall Leach recover his bill? we answer, whatever remedy he may have, it is against Pawlet, not Sandgate.

3. The instruction to the jury, to allow interest from fifteen days after the notice, &c., was peremptory, leaving nothing to their discretion. " The allowance of interest by the court, as incident to the debt, must be founded on the agreement of the party, expressed, or implied." *Everts* v. *Nason's Estate*, 11 Vt. 122. *Rensselaer Glass Factory* v. *Reid*, 5 Cow. 609, 614. Here was no express contract to pay interest;—but the argument is, that from fifteen days after the notice delay of payment was unreasonable, and so right and equity require the payment of interest, as damages for the delay, and that upon this equity, the law raises a promise. The answer is, that this claim, like all others arising under our pauper laws, is one

*strictissimi juris,* with which equitable considerations have nothing to do. Besides, it does not appear, that Pawlet was bound to pay interest on any of these bills. Of course, she can recover none. But it appears affirmatively, that the term of credit with Leach had not expired; of course, Pawlet was not bound to pay him interest, and, of course, can recover none upon that bill. Again, this being a matter of strict statute right and obligation, the letter of the statute must control, and this is silent as to interest.

III. As to the plaintiffs' exceptions;—

1. The contract with Dr. Edson was in its nature a gambling contract, and so not favored of the law; *Collamer v. Day,* 2 Vt. 144. It was against public policy, leading to extravagance, recklessness, and the plunder of other towns, in cases where the greatest good faith ought to prevail. Therefore, however the matter may stand as between Dr. Edson and Pawlet, the contract ought not to be enforced against Sandgate.

2. *Dr. Smith's bill* was not named in the notice. Sandgate was entitled to notice in writing of " *all* the charges and expenses." She was entitled to notice, therefore, of this specific charge and expense.

3. That Leach's contract with Pierce limited his right against Pawlet to $2,50 *per* week, for the year succeeding March 19, 1842, in the event that the pauper finally fell upon Pawlet, seems clear; since Leach could not claim of Pawlet a larger sum, than Pawlet could claim of Pierce, and that amount Leach had fixed by his contract. In the other event, the objections to a recovery for Dr. Edson's bill apply to a recovery for Leach's beyond $2,50 *per* week.

*G. W. Harmon* and *E. N. Briggs* for plaintiffs.

1. The contract made with Dr. Edson was not invalid. The town of Sandgate cannot complain, as no more than a reasonable compensation was stipulated to be paid to him.

2. Dr. Smith's bill ought to have been allowed. A specific notice is not required by the statute, but only a general notice. Dr. Smith's bill was included in the total sum, of which notice was given, and the defendants were in no way prejudiced. *Newton v. Danbury,* 3 Conn. 553. *Goshen v. Stonington,* 4 Conn. 209. *Stratford v. Fairfield,* 3 Conn. 588.

3. The agreement made by Leach with Pierce could not affect the right of the town of Pawlet to recover of Sandgate a reasonable compensation for keeping the pauper. But if Pierce was the agent of the town of Pawlet, and bound the town by the arrangement with Leach, as no consideration was received by Leach for abandoning his right to a reasonable compensation for keeping the pauper previous to that arrangement, and especially, as he did not thus abandon, the court erred in charging, that the plaintiff was entitled to recover only $2,50 per week for the *whole year*, in which Pierce contracted to keep the paupers of the town of Pawlet.

4. Interest was most clearly allowable after the expiration of fifteen days from the demand ; and we insist, that it should have been allowed from the time of rendering the services. 11 Vt. 122. 2 Vt. 536. 8 Vt. 258. *McIlvaine* v. *Wilkins,* 12 N. H. 474.

5. The statute does not require the justices to pass upon the ability of the pauper to be removed. The practice generally has been like that in the present case.

6. To entitle the plaintiffs to recover, it was not incumbent upon them to first *pay* the bills. The statute gives the right of action, not for moneys *paid,* but for expenses *incurred ;* and it is sufficient that the plaintiff was *liable* to pay the bills. *Westfield* v. *Southwick,* 17 Pick. 68. *St. Johnsbury* v. *Waterford,* 15 Vt. 692.

7. The contract between Leach and the town of Pawlet bound the town to pay him a reasonable compensation ; and hence, as the town was liable to him, the plaintiffs may recover the amount in this action.

8. The action is brought in the proper and approved form. Rev. St. 102, § 6 ; 104, § 12. Slade's St. 370, § 4 ; 372, § 11. *Middlebury* v. *Hubbardton,* 1 D. Ch. 205. *Fairfield* v. *St. Albans,* Brayt. 176, *St. Albans* v. *Georgia,* Ib. 177. *Londonderry* v. *Windham,* 2 Vt. 149. *Essex* v. *Milton,* 3 Vt. 17. *Danville* v. *Putney,* 6 Vt. 512. And any defects, which may appear in the declaration, are cured by the verdict. *Spencer* v. *Overton,* 1 Day 183. *Bliss* v. *Arnold,* 8 Vt. 252. Steph. on Pl. 148. *Martin* v. *Blodgett,* 1 Aik. 375. *Keyes* v. *Throop,* 1 Aik. 276. *Richardson* v. *R. & W. Turnp. Co.,* 6 Vt. 496. *Morey* v. *Homan,* 10 Vt. 565. *Battles* v. *Braintree,* 14 Vt. 348. *Lincoln* v. *Blanchard,* 17 Vt. 464.

The opinion of the court was delivered by

BENNETT, J.   The first question in this case relates to the form of action.   The defendants claim, that it should have been a special action on the case, upon the statute, and that assumpsit cannot be sustained.   The sixth section of the statute relating to the support and removal of paupers, upon which this action is based, does not prescribe the form of action.   It simply declares, that the town making the disbursements may recover for them, *by an action* brought in the name of such town against the delinquent town.

The general rule is, that, for money accruing due under the provisions of a statute, the action of assumpsit may be supported, unless another remedy is expressly given.   In *Bell* v. *Burrows*, Bul. N. P. 129, it was held, that general *indebitatus assumpsit* would lie to recover a sum of money awarded to be paid, by commissioners to divide common fields, under a private act of parliament.   The case of *Rann* v. *Green*, Cowp. 474, was assumpsit, brought by the plaintiff to recover a sum which had been ordered to be paid to him as vicar of a certain parish, in pursuance of the provisions of a private act of Parliament.   Lord Mansfield says, the statute was the only ground of action, and that without it there was no power to make the order ; and where it was made, *the law raised an assumpsit*.   There is no importance to the fact, that, in the case referred to, the amount of the claim had been liquidated by the order made under the statute.   The right of action arose out of the statute.   If the moneys accruing due under the provisions of a statute are uncertain in amount, they must be liquidated on trial ; and such fact is of no importance, as it respects the form of action.   If the law raised a promise to pay a sum of money accruing under a private act, certainly it would under a public act.   See Doug. 10, n. 2.

The case of *Brookline* v. *Westminster*, 4 Vt. 224, is a full authority for this declaration.   In that case there had been an order of court, upon the petition of the town of Brookline, against the town of Westminster, to pay a certain portion of the expense of building a bridge across what was called West River.   The plaintiff town built the bridge, and then recovered in an action of assumpsit against Westminster, the sum in which they had been assessed.   In that case the sum was liquidated on trial.   Westminister had, under the statute, been assessed, not a specific sum, but only a given portion

of the whole expense. The action was assumpsit in the case of *Londonderry* v. *Windham*, 2 Vt. 149. The first count alleged the sickness and expenses and notice correctly, but did not set out the order of removal; and the second count, which went for the expense of the order of removal and of the removal, omitted to allege any sickness to prevent a removal at the time the order was made. The declaration was. held insufficient, upon demurrer, for these causes; but there is no intimation, either by counsel or court, that assumpsit was not a proper form of action. So in the case of *Essex* v. *Milton*, 3 Vt. 17, the form of the action was assumpsit. The case of *Danville* v. *Putney*, 6 Vt. 512, was an action of assumpsit, to recover for the support of *transient* poor, under the 11th section of the statute. Judge Collamer, in giving the opinion of the court, says, in substance, that it is sufficient, upon general principles, to state all those facts which the statute renders necessary to create the liability, and thereupon raise the assumpsit, without setting up or expressly declaring upon the statute;—and he adds, that this is the usual course on the fourth section of the statute,—which answers to the sixth section of the Revised Statutes. Upon this ground, the first count, which was special, setting up what was necessary to create the liability under the statute, was held sufficient. And in that case it may be said, that the 11th section provided, that the remedy might be "by an action for money laid out and expended." Still it was held, that this was not imperative, and that a special assumpsit might be maintained. The case of *Middlebury* v. *Hubbardton*, 1 D. Ch. 205, was under the 11th section, and the court simply held, in that case, that a *general indebitatus assumpsit* will not lie for money laid out and expended, but that a case must be made, in the declaration, within this section of the statute. The remark of Judge Chipman, that, under the fourth section, it must be a special action on the case upon the statute, is extra-judicial.

On the whole, we think the first count in the declaration is well adapted to the plaintiff's case; and the motion in arrest was properly overruled.

The objection to the admission of parol evidence, to show the sickness of the pauper, &c., is without foundation. Indeed, it has been waived by the defendants' counsel in argument.

The charge of the court, that the plaintiffs were entitled to recov-

er for all such bills, as they were legally bound to pay at the commencement of the suit, notwithstanding they had not then been paid, we think, was correct.   By the sixth section of the statute, p. 102, the town of Sandgate was made liable to the town of Pawlet, to repay them *all charges*, occasioned in consequence of the inability of the pauper to be removed at the time of making the order, in maintaining and curing her, and in subsequently removing her to Sandgate.   So far as the town of Pawlet have made themselves liable, such liability is necessarily *chargeable* upon the town; and so far as individuals may have rendered services in maintaining and doctoring the pauper upon the credit of Pawlet, such individuals may well be considered as their agents; and the town may well sustain the action, though they have not yet paid the sums due such individuals.   *Westfield* v. *Southwick*, 17 Pick. 68.

The claim of James Leach is not to be distinguished from the other claims against the town of Pawlet.   Let the suit in regard to the settlement of the pauper be determined as it might, the town of Pawlet was liable to Leach for a reasonable compensation; and in one event, what should be a reasonable compensation should be determined by arbitrators; and, in the other event, by the amount which should be allowed the town in the suit against Sandgate. The fact, that, in this latter event, the town of Pawlet was not liable to pay Leach until after the recovery against Sandgate, can make no difference.   It became a present liability upon the town, upon the rendition of the services by Leach, but to be discharged *in futuro*.

We think the plaintiffs were entitled to interest on their claims after the expiration of the fifteen days from the time the notice was given to the defendants.   At the expiration of such time the plaintiffs' right of action was complete, and the defendants liable to a suit. In *Brookline* v. *Westminster*, 4 Vt. 225, interest was allowed on the plaintiffs' claim, from the time of the demand; and no objection was made on this point of the charge.   In *Houghton et al.* v. *Hagar*, Brayt. 133, the principle was adopted, that, in an action for goods sold and delivered, the court would direct interest to be cast from the time of demand; and there being no demand in the case, interest was allowed from the serving of the writ.   The same principle is adopted in *McIlvaine* v. *Wilkins*, 12 N. H. 474.   In *Arnott* v.

*Redfern*, 3 Bing. 353, it is said, there are two principles, upon which interest is given,—1st, Where the intent of the parties, that interest should be paid, is to be collected from the terms or nature of the contract ;—2d, In cases in which the debt has been wrongfully detained from the creditor ; and in *Hillhouse* v. *Davis*, 1 M. & S. 109, the principle stated is, that, although interest be not due *ex contractu*, a party may be entitled to damages to the amount of the interest, for any unreasonable delay in the payment of what is due. In the case now before us, the statute, requiring fifteen days notice to be given in writing of the plaintiffs' claims is, in effect, a demand of payment at the expiration of that time ; and if not then paid, the sum then due is wrongfully detained, and the law gives damages equal to the interest for such detention. There was no error in the county court, then, in telling the jury, that, if they found for the plaintiff, they should allow interest after the fifteen days. It was quite immaterial, whether the court called it interest, or damages for the detention of the sum due. We think, then, the defendants' exceptions cannot prevail.

As the plaintiffs have also excepted, it becomes our duty to examine their exceptions.

It seems the plaintiffs claimed to recover for Dr. Edson's bill, for services rendered in doctoring the pauper pending the appeal in relation to her settlement, under an agreement, that, if the pauper's settlement should be decided to be in Sandgate, he should have a reasonable compensation ; but if found to be in Pawlet, he should have nothing. We think, that the plaintiffs should not be allowed to recover any thing for Edson's bill. If the pauper was in need of his services, it was the duty of the town of Pawlet to see that they were had,— and that upon their own responsibility. To permit the town to make a sort of a *gambling* contract with Edson, so as, in one event, to screen them from any liability, and, in another, to lay the foundation for a recovery against the town of Sandgate, we think would be unwise and against sound policy. The town of Pawlet should be governed, in making expenditures, by the utmost fairness ; and no temptation should be held out to them, to make an expenditure for this pauper at the expense of Sandgate, which it was not incumbent upon them to incur without regard to the result of the suit involving the settlement of the pauper. The town of Sandgate is a stranger

Pawlet *v.* Sandgate.

to the transaction ; and the liability imposed upon them is a statute liability ; and if contracts like the present were sanctioned, it might tend to oppresive and reckless expenditures.

The county court were correct in not allowing the plaintiff to recover for Dr. Smith's bill. Before a town is liable to be sued, they are by the statute entitled to fifteen days' notice, in writing, of " all the charges and expenses" incurred in consequence of "the pauper's inability to be removed." As the town of Sandgate was neither party or privy to the expenditures for the support of the pauper, but the liability being imposed by statute, it is but reasonable, that the town should have notice of the *specific* expenditure ; and we think the statute requires it. The town may well wish to examine into the claim, before deciding upon its reasonableness. As Smith's bill was not named in the notice, as being included in Leach's bill ; the notice, as to that item, was insufficient.

The plaintiffs have no reason to complain of the charge of the court in relation to Leach's bill. Leach had agreed with Pierce, who was under contract with the town of Pawlet to support their poor, to keep the pauper in question at the rate of $2,50 per week, (provided there should be no extraordinary expenses,) in case her settlement should not be adjudged to be in Sandgate. The town should not be allowed to recover more for Leach, than what he would have been entitled to, had the pauper's settlement been found not to have been in Sandgate. It was immaterial to Leach, whether the settlement of the pauper was in the one place, or the other; and his agreement to keep the pauper at the rate specified must be evidence of what he considered it worth. Besides, the town of Sandgate should not be compelled to pay any more, than what it would have reasonably cost the town of Pawlet, had she been one of their own poor. The contract, in that event, limited by its own terms the amount of compensation.

The statute having given the town of Sandgate fifteen days to pay the bill, after notice of the expenditure, no interest should be allowed the plaintiff until a right of action accrued. There was no contract, express, or implied, to pay interest, and no wrongful detention of the money, until the expiration of the fifteen days.

The result is, that neither party can succeed in their exceptions ; and the judgment of the county court is affirmed.