## EZRA EDSON *v.* TOWN OF PAWLET.

The plaintiff, who was a physician, contracted with the overseers of the poor of the town of P., that he would render medical services to a pauper, who was then chargeable to P., and that, if the town of P. should, in a contemplated order of removal, succeed in establishing the legal settlement of the pauper to be in the town of S., he should receive from P. a reasonable compensation for his services, but if P. failed to establish the settlement of the pauper to be in S., he should receive nothing for his services;—and it appeared, that P. did succeed, upon the order of removal, in establishing the settlement to be in S. *Held,* that the contract, so made between P. and the plaintiff, was not invalid, as between them, but that the plaintiff might recover from P. the value of his services, notwithstanding it had been adjudged, that, as between the towns of P. and S., the contract was so far against the policy of the law, that no recovery could be had by P. for expenses for the services so rendered.

The overseers of the poor have authority to bind the town by such a contract,—since *in no event* was the plaintiff to receive more than a reasonable compensation for his services.

Evidence, in such case, that the overseers of the poor of P. agreed between themselves, before making the contract with the plaintiff, that the only contract which they would make with him should be one different in its terms from those above stated, is not admissible, for the purpose of proving, that such different contract was made.

The case of *Pawlet* v. *Sandgate,* 19 Vt. 621, considered and explained.

BOOK ACCOUNT. Judgment to account was rendered, and auditors were appointed, who reported the facts as follows.

The plaintiff's account was for services rendered by him, as a physician, in attending upon a pauper, who was chargeable to Pawlet. One of the three overseers of the poor of Pawlet employed the plaintiff to make his first visit to the pauper; and at that time a contract was made, between the overseer and the plaintiff, that the plaintiff should continue to attend upon the pauper, and that, if Pawlet should, by a contemplated order of removal, succeed in establishing the legal settlement of the pauper to be in the town of Sandgate, Pawlet would pay the plaintiff a reasonable compensation for his services; but that, if Pawlet should fail in establishing the settlement of the pauper to be in Sandgate, the plaintiff should receive nothing. The plaintiff's services, charged in his account, were rendered in pursuance of this contract. On the twenty fourth day of November, 1841, an order was made, under the statute, that

the pauper remove to Sandgate, and an appeal was taken, and the legal settlement of the pauper was adjudged by the supreme court, September Term, 1844, to be in Sandgate. The other overseers of the poor of Pawlet assented to and ratified the contract so made with the plaintiff. The pauper was not removed until November 19, 1844, but was supported by Pawlet until that time.

The defendants insisted, before the auditors, that the contract between the overseers of the poor and the plaintiff was, that the plaintiff should attend upon the pauper, and should receive from Pawlet whatever Pawlet should recover of Sandgate for such services,—but that, if Pawlet recovered nothing from Sandgate for the plaintiff's account, then the plaintiff should receive nothing ;—and for the purpose of proving this, the defendants offered to prove, that the overseers of the poor of Pawlet, previous to making any contract with the plaintiff, agreed between themselves, that such a contract, and none other, should be made. To this evidence the plaintiff objected, and it was excluded by the auditors.

The auditors reported, that there was due to the plaintiff $127,74. Exceptions were filed to the report; and the county court, June Term, 1849,—Hall, J., presiding,—accepted the report, and rendered judgment thereon for the plaintiff, for the amount found due by the auditors. Exceptions by defendants,

*F. Potter* for defendants.

The contract, under which the services were performed by the plaintiff, was a wagering contract, and therefore void. The compensation of the plaintiff depended upon an uncertain event, to wit, the place of the pauper's settlement. *Collamer* v. *Day*, 2 Vt. 144. *Danforth* v. *Evans*, 16 Vt. 538. *Howson* v. *Hancock*, 8 T. R. 575. It was against public policy, and a fraud upon Sandgate, and therefore void. *Holman* v. *Johnson*, Cowp. 341. *Smith* v. *Bromley*, Doug. 695. *Langton* v. *Hughes*, 1 M. & S. 593. *Dixon* v. *Olmstead*, 9 Vt. 310. *Woodruff* v. *Hinman*, 11 Vt. 592. *Pingry* v. *Washburn*, 1 Aik. 264. This very contract has been declared to be void in *Pawlet* v. *Sandgate*, 19 Vt. 621.

The overseers of the poor of Pawlet had no authority to make this contract. *Aldrich* v. *Londonderry*, 5 Vt. 448. The implied authority of an overseer of the poor is only to make a contract in

the ordinary and usual manner. If he do more, he becomes personally liable, and does not bind the principal. *Ives* v. *Wallingford*, 8 Vt. 224. *Ives* v. *Hulett*, 12 Vt. 314.

The auditors erred in rejecting the evidence offered by the defendants.

*D. Roberts, Jr.*, for plaintiff.

The plaintiff was in no event to receive more than a reasonable compensation for the services rendered by him, and the overseers of the poor might well agree to pay such amount. It was not, then, a gambling, or immoral, contract. Considerations of public policy, applicable to the case of *Pawlet* v. *Sandgate*, 19 Vt. 621, have no application here.

The evidence offered by the defendants was too remote from the issue, to be admissible.

The opinion of the court was delivered by

HALL, J. It is insisted, in behalf of the defendants, that the contract between the plaintiff and the town was a wagering contract, and for that reason should be held illegal and void. Since the case of *Collamer* v. *Day*, 2 Vt. 146, the doctrine has been considered as settled in this state, that all wagers are illegal, and that therefore the winning party to a wager will in no case be allowed to recover of the loser for the money or property won. If in this case the plaintiff is to be considered as suing for the recovery of a wager, there can be no doubt the defence should be held sufficient.

It may, perhaps, be difficult to give a legal definition of a wager. In ordinary acceptation, a wager is the placing of something valuable, belonging in part to each of two individuals, in such a position, that it is to become the sole property of one, upon the result of some unsettled question. Each of the parties risks something, which he may lose, and each may gain something, beyond what he risks. If he merely hazard the loss of something, without any expectation, in any event, of having more in return than he ventures, it would not seem to be a wager.

It does not appear to us, that the present was what can be properly termed a wagering contract. The plaintiff may be said to have risked his compensation upon the event of the pauper being found

to have a legal settlement in Sandgate. But he was in no event to have more than he ventured; the most he was to receive was a reasonable compensation for his services. It is merely a case, where a party performs a service, for which he is entitled to compensation, but which he agrees to relinquish upon the happening of some future event. It properly belongs to the class of "no cure no pay cases," upon the expediency of which we are not called upon to express an opinion; but which we find no ground for declaring to be illegal.

The case of *Pawlet* v. *Sandgate*, 19 Vt. 621, is much relied upon by the counsel for the defendants. That was an action by Pawlet to recover of Sandgate compensation for the expenses of Pawlet in supporting the pauper, in which Pawlet claimed to recover for the services of the present plaintiff; but the court held the town of Sandgate not liable for such services. The decision was not on the ground, that the contract between Edson, the present plaintiff, and the town of Pawlet was illegal, as between them; but because the court thought, it would be against sound policy to allow one town to recover compensation of another under such circumstances. The court did not undertake to decide, that Pawlet might not be liable for those expenditures, but only that they were to be considered, as not having been made by Pawlet in good faith towards Sandgate. We agree, that sound policy requires, that one town should not be allowed to charge such contingent expenditures to another; but that is quite a different question from that now under consideration,—whether the town, which contracts for such expenditures, shall be bound to pay for them.

The other objections, which the counsel take to the decision of the county court, we think are also untenable. The overseers of the poor had authority to bind the town of Pawlet to pay a reasonable compensation for the support of the pauper; and as that was the extent, to which they undertook to bind the town, we do not perceive any ground for saying they exceeded their authority. The fact, that the overseers had agreed among themselves not to make such a contract with the plaintiff, as the auditors find they did afterwards make, was properly excluded. It was but the offer of a party to prove his own declarations in his own favor; which were clearly inadmissible. The judgment of the county court is affirmed.