# C. C. CROSBY *v.* WALTER B. LYON.

SCHOOL FUND RAISED BY THE LEGISLATURE INVIOLABLE.—Whenever the Legislature of this State raises a fund, by taxation or otherwise, for the support of common schools, any contemporaneous or subsequent legislation having for its object the diversion of such fund to any other purpose is in contravention of the second section of Article IX of the State Constitution, and is void.

IDEM—CONSTRUCTION OF SECTION TWO, ARTICLE IX, OF CONSTITUTION.—The clause of Section Two, Article IX, of the Constitution, which provides " * * * *and such other means* as the Legislature may provide shall be inviolably appropriated to the support of schools throughout the State," includes as such "*means*" any fund arising from annual taxation for school purposes levied under general laws passed for that purpose.

IDEM—UNCONSTITUTIONAL STATUTE.—So much of section eighteen of "An Act to authorize the County of Placer to subscribe to the capital stock of the Central Pacific Railroad Company of California, and to provide for the payment of the same," etc., (Stats. 1863, p. 145,) as provides that "the taxes that may be paid by said [railroad] company to said [Placer] county, from time to time," shall be

paid into "the Railroad Fund" created by said Act, is unconstitutional and void, so far as it relates to the school tax of said county.

IDEM—A statute having the effect to exempt the taxable property of a railroad company in any county from the payment of a school tax lawfully levied upon the taxable property within such county, is in contravention of section thirteen of Article XI of the Constitution, which provides that "taxation shall be equal and uniform throughout the State," and in so far is void.

In the Supreme Court of the State of California

The facts are stated in the opinion of the Court.

*H. H. Fellows,* and *C. A. Tweed,* for Petitioner.

*Robert Robinson,* for Respondent.

By the Court, SANDERSON, J.:

This is a proceeding under the forty-ninth title of the Practice Act, to obtain a writ of mandamus, commenced by the Superintendent of Common Schools for the County of Placer against the Auditor of that county, to compel him to apportion to the School Fund of that county certain moneys derived from certain taxes levied by the Board of Supervisors upon the property of the Central Pacific Railroad Company of California for the support of common schools.

The petition shows that for the year 1868 the Board of Supervisors levied a tax of eighteen cents upon each one hundred dollars of taxable property in the county for the support of common schools.    That, under this levy, there was collected of the Central Pacific Railroad Company of California the sum of one thousand and thirty-four dollars and twelve cents, which is now in the treasury of the county. That it is the duty of the respondent to apportion this sum to the School Fund, yet he neglects and refuses to do so.

The respondent admits the refusal, and justifies it under the provisions of the eighteenth section of "An Act to authorize the County of Placer to subscribe to the capital stock of the Central Pacific Railroad Company of California, and to

provide for the payment of the same, and other matters relating thereto," (Stats. 1863, p. 145,) which, as he claims, requires him to apportion the money in question to the Railroad Fund for which that Act provides.

That Act authorizes the county to subscribe and take two hundred and fifty thousand dollars of the stock of the railroad company, to be paid for in the bonds of the county. It then makes provision for the issuing and redemption of the bonds, and to that end creates what is denominated a "Railroad Fund," to which all the dividends, issues, and profits arising from such subscription, "*together with the taxes that may be paid by said company to said county from time to time,*" are apportioned, until such time as the bonds shall be redeemed, after which one half of the dividends, issues, and profits is to be apportioned to the School Fund, and the other to the General Fund. (Sec. 18.)

Assuming that "the taxes" here spoken of include *all* taxes to be paid by the railroad company, irrespective of the purpose for which they may have been levied, it is argued that the statute, so far as it operates upon the school tax, is repugnant to the Constitution. The point is founded chiefly upon section two of Article IX of the Constitution, which provides that "the Legislature shall encourage, by all suitable means, the promotion of intellectual, scientific, moral, and agricultural improvement. The proceeds of all lands that may be granted by the United States to this State for the support of schools, which may be sold or disposed of, and the five hundred thousand acres of land granted to the new States, under an Act of Congress distributing the proceeds of the public lands among the several States of the Union, approved A. D. 1841, and all estates of deceased persons who may have died without leaving a will or heir, and also such per cent as may be granted by Congress on the sale of lands in this State, shall be and remain a perpetual fund, the interest of which, together with all the rents of the unsold lands, and *such other* means as the Legislature may

provide, shall be inviolably appropriated to the support of common schools throughout the State."

The clause of this section upon which the petitioner especially relies is the following: "And *such other means* as the Legislature may provide, shall be inviolably appropriated to the support of common schools throughout the State."

The second section of the Ninth Article of our Constitution is copied from the second section of the Tenth Article of the original Constitution of Iowa, which is the third section of the Ninth Article of the amended Constitution of that State.

The meaning of the clause in question arose in the case of *The District Township of the City of Dubuque* v. *The County Judge of Dubuque County*, 13 Iowa, 250, and it was held that the expression "and such other means as the General Assembly may provide," *ex vi termini*, included any other funds than those previously named which the Legislature might provide, and therefore included funds to be raised by taxation. And it was accordingly held that the money in question must be distributed according to another provision of the amended Constitution of that State, which required that the money subject to the support and maintenance of common schools should be distributed to the school districts in proportion to the number of youths between the ages of five and twenty-one years; and further, that a provision of the School Law, which authorized the distribution upon a different principle, was unconstitutional. This case determines that whenever the Legislature raises a fund, by taxation or otherwise, for the support of common schools, it cannot, by contemporaneous or subsequent legislation, divert the fund to a different purpose; and we think no other rational view can be taken of the language of the Constitution. It is suggested, however, on the part of the respondent, that the "means" intended were not such as might be raised by annual taxation, but such as might be made continuing and permanent, like the funds already specified. We are unable to perceive any warrant for such a construction, nor can we adopt it without adding words which the Constitution does not con-

tain.   The language is very broad—"such other means as the Legislature may provide"—and we are not authorized to limit its scope.   Under the School Law, the Legislature provided that the Boards of Supervisors should have power to levy a tax, not to exceed a specified sum, for the support of common schools in their respective counties, and, by force of the constitutional provision in question, the money, when collected, becomes "inviolably appropriated" to school purposes.   We can draw no other conclusion from the language which has been employed in the Constitution.   If, however, it be insisted that the fund cannot be deemed a School Fund, because, under the Act of 1863, it is expressly devoted to another purpose, the proposition becomes obnoxious to another objection.   Section thirteen, Article XI, of the Constitution provides that "taxation shall be equal and uniform throughout the State," and if no part of the tax paid by the railroad company is to be deemed a part of the school tax of the county, the result would be that the company would be exempt from a tax to which all the other property in the county would be subject for the support of schools.

Writ is allowed.

SAWYER, C. J., concurring specially:

It is clear to my mind that the eighteenth section of the Act of 1863, relied on by respondent, has no application whatever to the special tax raised for the specific purpose of supporting common schools, which produced the fund in question.   It only refers to general taxation for the ordinary purposes of county revenue.   The petitioner is, therefore, entitled to the writ on this ground.