[Sac. No. 1042.   In Bank.—June 22, 1903.]

## COUNTY OF SAN LUIS OBISPO, Respondent, v. HENRY T. GAGE et al., STATE BOARD OF EXAMINERS, Appellants.

MANDAMUS BY COUNTY TO STATE BOARD OF EXAMINERS—SUPPORT OF ORPHANS—INSUFFICIENT COMPLAINT.—A complaint by a county in *mandamus* against the state board of examiners to compel an allowance under the act of March 25, 1880, for the maintenance by the county of orphans, half-orphans, or abandoned children, is insufficient in respect of claims the amount of which is not stated in the complaint, and in respect of which the complaint does not allege that the county supported any such children for the time to which the claims must have referred, and does not contain any facts which would justify the board of examiners in allowing such claims, or require it to allow them.

ID.—SUFFICIENCY OF ANSWER—STATUTE OF LIMITATIONS—TRAVERSE.— Where the complaint in *mandamus* sufficiently alleged a claim which was presented and filed with the board more than two years after it had accrued, an answer showing that the claim was rejected, among other reasons, ''because the same has not been properly filed and presented in due time, and within the time provided by law,'' is equivalent to a statement that it was barred by the statute of limitations, and is a sufficient traverse of an allegation of the complaint that the board of examiners rejected the claim, ''without right, against facts, and against law.''

ID.—DUTY OF EXAMINERS—PRESUMPTION.—It is the duty of the state board of examiners to consider all facts appearing upon the face of the claim and otherwise brought to the attention of the board. They need not go through the form of a trial, but when satisfied from the facts appearing before them that the claim in controversy was barred by the statute, if nothing appears to the contrary, it must be presumed that it rejected the claim for the reason that it was outlawed.

ID.—BAR OF STATUTE—CLAIM ON CONTRACT.—A claim against the state for the maintenance by a county of orphans, half-orphans, and abandoned children, under the act of March 25, 1880, is a claim resting upon contract implied from such maintenance, within the meaning of the act of 1893, barring claims on contract against the state within two years after the cause of action shall have accrued.

ID.—PRESENTATION OF CLAIM TO BOARD—DELAY OF DEMAND—RUNNING OF STATUTE.—It being within the power of the county to make demand by presenting the claim to the state board of examiners immediately upon the accruing of the claim, so as to set the

statute of limitations in motion, the county cannot escape the bar of the statute by delaying such demand indefinitely; and where the claim appeared to have been barred by the statute long before it was presented to the board of examiners, it was proper for the board to reject it because not presented in time.

ID.—STATUTE OF LIMITATIONS IN MANDAMUS—FAILURE OF DEMAND.—A party cannot escape the operation of the statute of limitations, even in an action for *mandamus,* by failure to make a demand which was at any time within his power.

ID.—CONCLUSION OF LAW—PLEADING AND FINDING.—The allegation in the complaint that the board of examiners rejected the claims, "without right and against the facts," is of a mere conclusion of law, and presented no issue, and a finding thereon is of no more force than the allegation.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Tirey L. Ford, Attorney-General, C. N. Post, Assistant Attorney-General, and Devlin & Devlin, for Appellants.

The statute of limitations applies to an action in *mandamus.* (*People* v. *Supervisors of Westchester,* 12 Barb. 446; *Prescott* v. *Gonser,* 34 Iowa, 179; *Tanner* v. *Potts,* 3 Mont. 364; *People* v. *French,* 12 Abb. N. C. 156.) The failure of a demand which might have been made at any time does not prevent the running of the statute against a *mandamus.* (*Bates* v. *Gregory,* 89 Cal. 387; *Barnes* v. *Glide,* 117 Cal. 1;[1] *Meherin* v. *San Francisco Produce Exchange,* 117 Cal. 215.)

Milton Shepardson, Albert M. Johnson, Bigelow & Dorsey, and R. F. M. Soto, for Respondent.

*Mandamus* will lie to an official board which has rejected a lawful claim. (*Raisch* v. *Board of Education,* 81 Cal. 542; *Keller* v. *Hewitt,* 109 Cal. 146.) Writ of mandate lies to the state board of examiners. (*Grand Lodge* v. *Markham,* 102 Cal. 169.) The statute of limitations was not pleaded either by demurrer or answer. It must be presented by demurrer where it appears on the face of the complaint. If not presented it is deemed waived. (*Lady Washington etc. Co.* v. *Wood,* 113 Cal. 482; Code Civ. Proc., secs. 434, 458.) There

[1] 59 Am St. Rep. 153.

is no statute of limitation applicable to this action by the county against the state for the support and care of orphans. The statute only applies to suits by individuals. The act of 1893 does not apply to counties. (*Hunsaker* v. *Borden,* 5 Cal. 288, 290;[1] *Sharp* v. *Contra Costa County,* 34 Cal. 284, 290; *Whittaker* v. *County of Tuolumne,* 96 Cal. 100; 19 Am. & Eng. Ency. of Law, 2d ed., p. 191; *State* v. *Gracey,* 11 Nev. 223, 227, 228.)

SHAW, J.—This was a proceeding against the defendants in their capacity as *ex officio* members of the state board of examiners. The object of the proceeding was to obtain a writ of mandate compelling the board to allow and approve certain claims in favor of the county of San Luis Obispo against the state of California. Findings were made and judgment given for the plaintiff, and the defendants appeal.

The questions in controversy arise under the act of March 25, 1880. (Stats. 1880, p. 13.) This act appropriates to each institution in this state conducted for the support and maintenance of minor orphans, half-orphans, or abandoned children, and to each county, city and county, city, or town maintaining such orphans, half-orphans, or abandoned children, one hundred dollars per annum for each orphan, and seventy-five dollars per annum for each half-orphan or abandoned child so supported or maintained. Section 22 of article IV of the state constitution is also referred to by the plaintiff in support of its claim; but as the act is complete without aid from the proviso contained in that section, it need not be considered further than to say that it furnishes constitutional authority for the statute. The act further provides that every claim under its provisions shall be presented to and audited and allowed by the state board of examiners, and prescribes the form and contents of the claim to be presented to the board, and, further, that if the claim be audited and allowed in whole or in part by the board, it shall be the duty of the controller to draw his warrant for the sum allowed in favor of the party to whom it is allowed.

The complaint alleges that the county of San Luis Obispo, during the six months ending June 30, 1895, maintained and supported certain half-orphans of the class described in the

[1] 63 Am. Dec. 130, 131.

act, at an expense of $571.99; that in March, 1899, it presented and filed with the state board of examiners a statement of its claim, made out and verified as required by the act, for the amount so expended; and that on the fourth day of October, 1900, the board of examiners rejected the claim, "without right, against facts, and against law." A copy of the claim is made part of the complaint. It also alleges the filing and presentation of a separate claim for each succeeding six months from January 1, 1883, to January 1, 1898.

The answer does not specifically deny any of the allegations of the complaint, but affirmatively alleges that at a meeting of the state board of examiners on the fourth day of October, 1900, the claims of the plaintiff were duly considered; that after said consideration they were rejected and disallowed; that, in pursuance of said action of the board, a statement was filed by the board showing the rejection and disallowance, and giving the reasons therefor, duly signed by the governor and secretary of state. This statement, or certificate, is set forth at length, and is to the effect that the claims were rejected, among other reasons, "because the same has not been properly filed and presented in due time, and within the time provided by law."

Appellants earnestly insist that the decision of the board is conclusive, and cannot be reviewed at all by the courts; but, in view of the conclusion reached on the merits, we do not consider this question.

The respondent contends that the answer admits all the allegations of the complaint. It is true that there is no formal denial, but that is not essential. An issue may be raised by an affirmative allegation of the answer which is inconsistent with some allegation in the complaint. In such a case the facts stated in the complaint are to be deemed controverted in so far as they are inconsistent with the averments of the answer. (*Perkins* v. *Brock,* 80 Cal. 320; *Churchill* v. *Baumann,* 95 Cal. 541; *Miller* v. *Brigham,* 50 Cal. 615.) . Conceding for the present that the plaintiff's allegation that the board rejected the claim "without right and against the facts" is a statement of fact, and not a conclusion of law, then, in so far as the answer can be considered to state facts showing that the board rejected the claim rightfully, upon the

CXXXIX. Cal.—26

facts stated in the claim or otherwise known to the board, it must be taken as a traverse of that allegation of the complaint.

The appellants contend that the portion of the petition relating to the separate claims of the county for each six months succeeding January 1, 1883, other than for the first half of the year 1895, is not well pleaded, and that no action of the court could be had with respect to those claims. We are of the opinion that this contention must be sustained. There is nothing in the complaint in regard to the amount of these claims, nor any allegation that the county ever maintained or supported any orphans, half-orphans, or abandoned children for the time to which these claims must have referred; nor is any other matter alleged which would justify the board of examiners in allowing them, or require it to do so, unless it can be said that it is its duty to allow every claim which is made out and verified in manner and form as prescribed by the act of 1880, or, in other words, that the claims conclusively prove themselves. But it must be the law that where the writ of *mandamus* is invoked there must be a showing to the court which issues the writ, not only that a claim has been filed in form as prescribed by the statute, but also that the facts exist to which the claim refers, and upon the existence of which only the board of examiners is required to allow the claim. If this proceeding had been merely to compel the board to act upon the claims, perhaps the *mandamus* could be justified upon the ground that such action can be compelled without regard to the question whether the claim is meritorious or not. But where the writ is prayed for to compel the board to act favorably on the claims (assuming, but not deciding, that the courts can compel such action in any case), facts must be particularly set forth showing that it ought to allow them, and that its refusal to do so would.be an abuse of the discretion which is vested in it by the provisions of the Political Code. This court has never expressly decided that the board of examiners is subject to such control by the courts, although it has in one or two cases exercised such control without discussing the question of its power. But it can be done, if at all, only where there has been a plain abuse of discretion. (*Wood* v. *Strother,* 76 Cal. 549;[1] *Stock-*

---

[1] 9 Am. St. Rep. 249.

*ton R. R. Co.* v. *Stockton,* 51 Cal. 339; *People* v. *Supervisors,* 45 Cal. 395; *Lawrence* v. *Booth,* 46 Cal. 187; *Grand Lodge* v. *Markham,* 102 Cal. 169.)   The judgment was therefore erroneous, in so far as it referred to these claims not specifically set forth in the complaint.

There is no finding upon the facts alleged in the answer with relation to the action of the board of examiners, except the following: "That on the fourth day of October, 1900, said board of examiners did meet to act upon, and did act upon, and did reject each and every claim of petitioner, and attach thereto, and to each thereof, its certificate of rejection. . . . That said claims, and each and every one thereof, were rejected by said state board of examiners, without right, against the facts, and against the evidence."

It was the duty of the court to find upon all the facts at issue in the case, including the affirmative allegations of the answer, provided such affirmative allegations are material and constitute a good defense to the action. If, therefore, the allegations of the answer setting forth in detail the action of the board of examiners, and especially setting forth the reasons for which the board rejected the claims, are material, it would be error if the court failed to find thereon. This makes it necessary to consider the materiality of these allegations, and practically puts the consideration of the case upon the same ground as if the court had found that these allegations of the answer were true. And, aside from the answer, the question must always remain whether or not the action of the board was justified by the facts appearing by the complaint alone. The material facts of the answer sufficiently appear in the complaint.

It is the duty of the state board of examiners in passing upon a claim against the state to consider all the facts appearing upon the face of the claim and otherwise brought to the attention of the board. It is not necessary that the board should go through the form of a trial, with the formal introduction of evidence, as in the case of a court trying a cause between parties. In the absence of any allegation to the contrary, it will be presumed that the board acted upon and considered all the facts appearing on the face of the claim, and all other facts of which it had satisfactory knowledge having any bearing upon its validity. If, therefore, the

board was satisfied from these facts that the claim in controversy was barred by the statute of limitations, and nothing appears in the record to the contrary, it must be presumed that it rejected the claim for the reason that it was so outlawed. It is also to be observed that the statement of the reasons for the disapproval of a claim, as required by section 662 of the Political Code, need not be made out in formal legal language. We are of the opinion that the statement of the board that the claim was not presented in "due time," or "within the time required by law," is equivalent to a statement that it was barred by the statute of limitations. The question to be decided in the first instance, therefore, is whether or not the particular claim set forth in the complaint, for the support of half-orphans for the six months preceding June 30, 1895, was barred by the statute of limitations at the time it was filed with the state board of examiners.

The respondent insists, in the first place, that the statute of limitations does not begin to run against a party until he can lawfully maintain an action against the party who is liable; and as the law did not allow an action to be maintained against the state of California in any case until the passage of the act of February 28, 1893, (Stats. 1893, p. 57,) that the statute could not begin to run until that act took effect. There is authority to the effect that it is a necessary condition to the operation of the statute of limitations upon a cause of action, that it cannot begin to run until there is a party in being against whom an action may be maintained, and in cases where the state is a party, and there is no law permitting the state to be sued, the statutes of limitations do not apply. (*Stanley* v. *Schwalby*, 85 Tex. 348; Wood on Limitations of Actions, sec. 217.) It may be admitted for the purpose of this case that until this act of 1893 was passed the plaintiff had no right to sue, and was not affected by the statute of limitations. But when this act was passed, if it gave him a right to sue, the statute at once began to run, and his claim in that event would have been barred long before it was filed with the board. But here respondent further insists that these claims do not come within the terms of that act, and that there never has been any law permitting suit against the state upon claims of the character here in controversy.

This presents the question whether or not this action comes

within the classes of persons mentioned in the act of 1893. The language of this act is:—

"Section 1. All persons who have, or shall hereafter have, claims on contract, or for negligence, against the state, not allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment.

"Sec. 2. No such suit shall be maintained on any claim now existing, unless the same be brought within two years after this act takes effect; nor shall any such suit be maintained on any cause of action hereafter arising, unless the same shall be commenced within two years after such cause of action shall have accrued."

The question to determine is whether or not the claim of the plaintiff in this action is a claim on contract within the meaning of the act of 1893, allowing suits to be maintained against the state. As the purpose of this act was to allow certain actions to be maintained against the state, which the law had not theretofore permitted, it is to be presumed, in construing the statute, that the language was used with reference to the subject in hand, and, therefore, that the word "contract" was used in the same sense in which it is ordinarily used when speaking of different classes of actions. The Code of Civil Procedure declares that civil actions arise out of either obligations or injuries (sec. 25), and that an obligation is a legal duty by which one person is bound to do or not to do a certain thing, and arises either from contract or operation of law (sec. 26). Actions are classified in various ways, but the classification in Chitty on Pleading with reference to personal actions may be considered as having an important bearing upon the meaning of this statute: "Personal actions are either in form *ex contractu* or *ex delicto,* or, in other words, are for breach of contracts, or for wrongs unconnected with contract." (1 Chitty on Pleadings, p. *110.) It is further stated by that author that *assumpsit* is a form of action on contract, and that *"assumpsit* is not sustainable, unless there has been an express contract, or unless the law will imply a contract." (Chitty on Pleading, p. *111.) The claim in controversy does not arise

upon any express formal contract *inter partes*, between the plaintiff on the one hand and the state of California on the other. It arises, if at all, from the effect of the act of 1880, and the subsequent performance by the respondent of the conditions which bring it within the terms of the statute. It is, in one sense, a liability arising from a statute; but it does not follow that it may not nevertheless be a contract. Contracts may be made or evidenced by a statute, and by conduct ensuing thereupon, as well as by other means or evidence. Thus, it is held in *Kennedy* v. *California Savings Bank,* 97 Cal. 93,[1] that the statutory liability of a stockholder in a corporation to pay his proportion of a debt due from the corporation itself is a contract within the meaning of the law which limits the right of attachment to actions upon a contract. And in *Dennis* v. *Superior Court,* 91 Cal. 548, it was held that this statutory liability "is an obligation arising upon contract within the meaning of section 112 of the Code of Civil Procedure, giving original jurisdiction to a justice's court in actions arising upon contracts," where the amount claimed is less than three hundred dollars. In *Hillsborough* v. *Londonderry,* 43 N. H. 451, an action to recover money paid by a county for the support of a pauper against the town which was made especially chargeable for his support by the statute, was held to be a case wherein the law implied a contract to made the payment, and it was said that therefore an action of *assumpsit* would lie. It seems to be well settled "that the general rule is, that for money accruing due under the provisions of a statute, the action of *assumpsit* may be supported, unless another remedy is expressly given." (*Pawlet* v. *Sandgate,* 19 Vt. 629; *Bath* v. *Freeport,* 5 Mass. 325; ·1 Chitty's Pleading, p. *119; *Bell* v. *Burrows,* Bul. N. P. 129; *Raun* v. *Green,* Cowp. 474; *Brookline* v. *Westminster,* 4 Vt. 224; *Danville* v. *Putney,* 6 Vt. 512; *Londonderry* v. *Windham,* 2 Vt. 149; *Jones* v. *Town of Chester,* 67 N. H. 191; *Elliott* v. *Gibson,* 10 B. Mon. 438.) It is not necessary to decide, and we do not wish to be understood to hold, that the act of 1893 is to be construed to mean that an action may be maintained against the state in every case where an action of *assumpsit* would lie at common law. There were many cases where *assumpsit* was allowed, although there was in fact no contract

[1] 33 Am. St. Rep. 163.

made, nor any dealings whatever between the parties, the law implying a contract out of necessity, and because without such fictitious creation none of the legal forms of action would apply and the party would be remediless. There is a clear distinction between such a case and one where the making of a contract or agreement is implied, as a matter of evidence. (*Hertzog* v. *Hertzog*, 29 Pa. St. 465.) There might be strong reasons in favor of the proposition that the legislature, in referring to "claims on contract," meant real contracts, not fictitious ones. (*Melvin* v. *State*, 121 Cal. 23.)

Aside from the authorities on the subject, it must be conceded upon principle that the obligation here in controversy is an obligation arising upon a contract. The state by the act of 1880, in effect promised to each county in the state that if it should thereafter maintain and support persons of a class mentioned in the act, the state would appropriate and pay to such county the sums of money therein stated. This was the equivalent of an offer upon condition, and upon the performance of the condition by any county the offer became a promise, and binding as such upon the state. There was before 1893 a limitation upon the binding force of such a contract, when so consummated, in this, that, as the state could not be sued, the law furnished no remedy for the failure or refusal to pay; but that limitation does not detract in the least from the effect of the whole transaction as establishing a contractual relation. It is analogous to the case where a natural person offers a reward for the performance of some particular act, as the recovery of property or the apprehension of a criminal. The offer is made to no person in particular; but when the act upon which it depends is performed, the offer and the act combined make a complete contract between the person making the offer and the person who performs the act, and this may be the subject of an action, and a recovery may be had thereon against the person making the offer, for the amount of the reward. (*Ryer* v. *Stockwell*, 14 Cal. 136;[1] *McLeod* v. *Meade*, 77 Cal. 87.) It may be conceded that there may be other obligations arising by operation of law which do not also come within the class of obligations arising from contract; but it must also be admitted that there are obligations which, in a certain sense, arise

[1] 73 Am. Dec. 634, and note.

from the operation of law, and at the same time are in substance and effect contracts. The obligation here in question comes within this latter class. It arises from the operation of the act of 1880. The act itself, coupled with the subsequent performance of the conditions by the respondent, furnishes all the elements which are necessary to the formation and existence of an implied contract. It must therefore be concluded that the claim of the respondent against the state is a claim on contract within the meaning of the act of 1893, which allows persons having such claims to maintain a suit thereon against the state.

It is further claimed by respondent that the act by its terms applies only to claims which have not been allowed by the state board of examiners; that, in the connection in which this language occurs, it must be construed to mean claims which have been acted upon and rejected by the state board of examiners; and from this it is argued that the action of the board of examiners is a condition precedent to the right to maintain an action, and that, in consequence, the statute does not begin to run until the claim has been presented to the board and acted upon by it. Under the circumstances of this case this proposition cannot be maintained. It was within the power of the respondent at any time after the claim accrued to set the statute in motion by presenting the claim to the proper board. It is well settled that in such a case the party cannot delay making the demand until after the statute of limitations would have barred the claim, and thereafter assert the claim on the ground that the statute did not begin to run until after the demand had been made. The case of *Barnes* v. *Glide*, 117 Cal. 8,[1] is conclusive on this proposition. It is there held that although it is true that the action of *mandamus* cannot in general be maintained until there has been a refusal to perform the official duties sought to be enforced, yet "to hold that a plaintiff who has a right to demand performance at any time may delay such demand indefinitely, would enable him to defeat the object and purpose of the statute"; and that a party cannot escape the operation of the statute of limitations, even in an action for *mandamus,* by such failure to make a demand which was at any time within his power. (See, also, *Bates* v. *Gregory,* 89 Cal. 387; *McDowell* v. *Dalton,*

[1] 59 Am. St. Rep. 153.

68 N. Y. Supp. 419; 33 Misc. Rep. 359; *People* v. *Chapin,* 104 N. Y. 96; *Meherin* v. *San Francisco Produce Exchange,* 117 Cal. 215; *Williams* v. *Bergin,* 116 Cal. 56.)

The act of 1893, as we have seen, contains also a statute of limitations which requires an action upon such a claim to be begun within two years after the cause of action accrues. The cause of action upon the claim specifically set forth in the respondent's petition accrued on July 1, 1895, and the two years' limitation expired on July 1, 1897, which was long before the claim was filed with or presented to the state board of examiners. As has been said, the failure to file and present the claim within the time prescribed by the statute as effectually barred the claim when it was presented as would the failure to begin an action thereon after such claim was presented and rejected by the board. It therefore follows that the board was acting within its powers, and that its discretion was not abused when it rejected this claim because it was not presented in time.

There is an allegation in the complaint that the board rejected the claims "without right and against facts," and this allegation is followed by a finding in the same language. We are of the opinion that this is a mere conclusion of law, and presented no issue for the consideration of the court below, and that the finding is of no more force than the allegation.

We do not consider it necessary to decide whether or not, under the act of February 28, 1893, there is such a plain, speedy, and adequate remedy in the ordinary course of law, by action against the state, that the plaintiff is thereby precluded from maintaining a proceeding for a writ of *mandamus.*

In view of these conclusions, it must follow that the action of the court below in granting the writ was erroneous, and that the judgment must be reversed, and it is so ordered.

McFarland, J., Van Dyke, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.