[Sac. No. 1116.   In Bank.—May 21, 1904.]

## JAMES McCORD, Appellant, v. W. H. SLAVIN, Treasurer of Kings County, Respondent.

Lands Uncovered by Recession of Lake—Subjection to Overflow—Construction of Statute—Reclamation District—Rights to Swamp-Land Fund.—The act of March 24, 1893, providing for the sale of "any of the lands uncovered by the recession or drainage of the waters of inland lakes," etc., and also providing that such lands, when subject to periodical overflow and susceptible of reclamation, may be reclaimed "subject to all of the provisions of law regulating the reclamation of swamp and overflowed lands," is to be construed with the same effect as if the sections of the Political Code providing for the reclamation of swamp and overflowed lands were re-enacted and made part of that act. A reclamation district may be formed by the purchasers of such lands, and, when reclaimed, each purchaser is entitled to his proportion of the moneys in the hands of the treasurer to the credit of the swamp-land fund of the county.

Id.—Provision for Payment into School Fund—Appropriation—Amendment—Payment into Swamp-Land Fund—Power of Legislature.—The provision in section 5 of the act of 1893 for the payment of the proceeds of the sale of lands uncovered by the recession or drainage of lakes "into the school fund of the county where the land lies," does not of itself constitute an appropriation of the moneys for that purpose; and the legislature had power by the amendment of 1899 to that section to provide that all such proceeds remaining in the treasury, or subsequently received, should be paid into the swamp-land fund.

Id.—Contract with State—Amendment not a Gift.—The provision in the act of 1893 for the reclamation of lands uncovered by the recession or drainage of lakes, "subject to all the provisions of law regulating the reclamation of swamp and overflowed lands," was part of the act authorizing the sale of such lands, and formed part of the consideration for which the purchases were made, and the state could not disregard its contract for repayment after reclamation of the purchase money paid, and the amendment of 1899 was in fulfillment of its contract, and not a gift of public moneys belonging to the state.

Id.—Mandamus—Statute of Limitations—Claim upon Written Contract of State.—A proceeding for a writ of mandate by the owner of reclaimed land to compel the repayment of purchase money out of money remaining in the county treasury as part of the swamp-land fund, in contemplation of law, is for a claim upon a contract evidenced by a statute, which is an instrument in writing

executed by the siate, and is subject to the statute of limitations of four years, and not to the two years' limitation of subdivision 1 of section 339 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge.

The main facts are stated in the opinion. The limitation pleaded by the answer was subdivision 1 of section 339 of the Code of Civil Procedure.

Jones, Park & Jacobs, for Appellant.

Whatever public funds or property the legislature applies to any particular fund of a county, it may at any time thereafter take away, if the public interest so requires, if the moneys are still in the treasury and unexpended. (*Wyman* v. *Banvard,* 22 Cal. 525; *Conlin* v. *Board of Supervisors,* 99 Cal. 21; *Tippecanoe County* v. *Lucas,* 93 U. S. 114; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *County of Richland* v. *County of Lawrence,* 12 Ill. 1; *People* v. *Power,* 25 Ill. 169; *Marion County* v. *Lear,* 108 Ill. 343; *State* v. *Hoeflinger,* 31 Wis. 257; *Richland County* v. *Village of Richmond,* 59 Wis. 591; *Taggart* v. *State,* 142 Ind. 668; *State* v. *Rubey,* 77 Mo. 617; *People* v. *Ingersoll,* 58 N. Y. 21;[1] *People* v. *Crennan,* 141 N. Y. 239.)

Rowen Irwin, for Respondent.

The legislature had no power to make a gift of public moneys. (Const., art IV, sec. 31.) It has no power to divert school funds. (Const., art IX, sec. 4; *Crosby* v. *Lyon,* 37 Cal. 242.) The act of 1893 does not provide for repayment of purchase money in cases of this kind, and it belongs absolutely to the state, and cannot therefore be given away. The action was not brought within two years from the time of the completion of the reclamation, and is therefore barred. (*Miller* v. *Batz,* 131 Cal. 402.) The statute of limitations of four years upon a written instrument, being a statute executed by the state, is the only one applicable in this case. Subdivision 1 of section 339 of the Code of Civil Procedure has no application. (*Miller* v. *Batz,* 131 Cal. 402; *Robertson* v. *Blaine County,* 90 Fed. 63.)

[1] 17 Am. Rep. 178.

HARRISON, C.—By section 1 of an act approved March 24, 1893, (Stats. 1893, p. 341,) the legislature authorized the sale of "any of the lands uncovered by the recession or drainage of the waters of inland lakes, and inuring to the state by virtue of her sovereignty, or the swamp and overflowed lands not segregated by the United States," to any person desiring to purchase the same, upon his making an application therefor in conformity with the provisions of said act.

Section 5 of the act declares: "The swamp and overflowed lands designated in this act shall be sold and patented at the same price and on the same terms and manner of payment as at present provided for swamp and overflowed lands. All moneys received for said swamp and overflowed lands shall be paid into the swamp-land fund of the county in which the lands are situated, and shall be treated and disposed of in the manner as moneys arising from the sale of segregated swamp and overflowed lands. If any of the lands are suitable for cultivation without reclamation, such lands shall be sold only to actual settlers in tracts not exceeding three hundred and twenty acres. Lands uncovered by the recession or drainage of the waters of inland lakes shall be sold at two dollars and fifty cents per acre, upon the same terms of payment as for swamp and overflowed land. All moneys derived from the sale of such uncovered lands shall be paid into the school fund of the county where the land lies."

Under the provisions of this act the appellant herein and others severally made application for the purchase of different parcels of land within the county of Kings, which had been uncovered by the recession or drainage of Tulare Lake, and had inured to the state of California by virtue of her sovereignty, and upon making the application required by said act received certificates of purchase therefor. After receiving the certificates of purchase they presented to the board of supervisors of Kings County, November 11, 1896, their duly verified petition for the formation of a district for the reclamation of a body of land in said county, containing 5,079 acres, of which the land of said petitioners, represented by said certificates amounting to 2,050 acres, formed a part. The said petition set forth the matters required by section 3446 of the Political Code, and also stated that all of said land within the said proposed district was subject to periodical

overflow, and needed and was susceptible of one mode of reclamation. Upon hearing the petition, the board of supervisors found and determined that all of the statements therein were correct, and that the proposed reclamation of all of said land was necessary and feasible, and made an order approving the same, which was indorsed on the petition, and duly recorded by the county recorder, and a copy thereof was forwarded to the register at Sacramento. The district was thereafter organized as a body corporate by the adoption of by-laws and the election of a board of trustees as required by the Political Code, and after such organization proceeded with and completed the reclamation of the land within its boundaries; and on November 7, 1898, the trustees thereof certified, under oath, to the board of supervisors of said county, and showed to their satisfaction that the works of reclamation were completed, and thereupon the board of supervisors certified such facts to the register. The register thereupon credited each purchaser in the district with payment in full for the land purchased by him, and on May 18, 1899, forwarded to the respondent, who was, and still is, the treasurer of Kings County, a statement showing the amount ·paid for the land by each purchaser in the district, including interest, amounting in the aggregate to $2,099.75. May 30, 1902, the purchasers, other than the appellant, assigned to him their claims and demands against the treasury for the amount so certified by the register, and on June 2, 1902, he demanded of the respondent payment of the amounts so certified by the register. The respondent refused to pay the same, and thereupon the appellant applied to the superior court of Kings County for a writ of mandate compelling him to make such payment. To this petition the respondent filed a demurrer and answer, and upon the trial thereof the court denied the application and rendered judgment against the petitioner. From this judgment the present appeal has been taken.

Section 6 of the act of 1893 provides: "Any of the lands designated in this act, which, by reason of periodical overflow, need and are susceptible of reclamation, may be reclaimed by the formation of districts, in the same manner and subject to all of the provisions of law regulating the reclamation of swamp and overflowed lands; *provided,* that the board

of supervisors of the county in which the lands, or the greater part thereof, are situated, must first determine, upon proper petition presented therefor, by the holders of the title, or evidence of title, representing one half or more of any body of such land, that such reclamation is necessary and feasible."

The purpose of this section is to enable the holders of land purchased under the provisions of the act which "need and are susceptible of reclamation" to avail themselves of the provisions of the Political Code (secs. 3446-3491) for effecting such reclamation. The limitation of this privilege to the lands which need reclamation "by reason of periodical overflow" is but a statutory designation of the test which had been applied for determining what lands are "swamp and overflowed lands," within the meaning of the act of Congress of September 28, 1850, known as the Arkansas Act. (See *Keeran* v. *Allen*, 33 Cal. 542.) The act of 1893 provides for the sale of two classes of land,—viz., swamp and overflowed land which has not been segregated, and lands uncovered by the recession or drainage of inland lakes, a portion of which the act itself contemplated might be swamp and overflowed land, i. e. "might need and be susceptible of reclamation by reason of periodical overflow." It is therefore reasonable to suppose that the legislature intended by the above section of the act that the system which was already provided in the Political Code for the reclamation of swamp and overflowed lands should include the swamp and overflowed lands whose sale was authorized by this act, and thereby have a uniform application to all such lands within the state.

The provision in the section that the lands may be reclaimed, "subject to all of the provisions of law regulating the reclamation of swamp and overflowed lands," is to be construed with the same effect as if the above sections (3466 et seq.) of the Political Code were re-enacted and made a part of the act itself. Section 3477 provides that after the works of reclamation have been completed, and the board of supervisors have so certified to the register, he "must forward to the treasurer of the county in which any part of the district is situated, a statement, showing the amount paid by each purchaser in the district, including interest; and the county treasurer, after deducting all amounts chargeable against the

lands in said district by reason of moneys drawn from the 'swamp-land fund' of the county, must divide the balance *pro rata* amongst the original purchasers of land in the district, or their assigns, and must pay to each purchaser, or his assigns, on demand, the amount found to be due him from such computation, out of the moneys in his hands to the credit of the 'swamp-land fund' of the county.'' In the appellant's petition for the writ it is set forth that there are no amounts chargeable against the lands in the district by reason of any moneys drawn from the swamp-land fund of the county, and that the said district has not now, and never has had, any outstanding indebtedness represented by controller's warrants drawn on the state treasurer. By virtue of the provisions of the above section of the Political Code the appellant was therefore entitled to receive from the respondent, as treasurer of the county, the full amount of the moneys set forth in the statement forwarded by the register to said treasurer.

The respondent, however, contends that the provision of the above section of the Political Code is not available to the appellant, for the reason that it is there provided that the payment is to be made ''out of the moneys in his hands to the credit of the swamp-land fund of the county,'' whereas section 5 of the act of 1893 declares that ''all moneys received from the sale of such uncovered lands shall be paid into the school fund of the county where the land lies.'' In reply to this contention the appellant invokes an act of the legislature passed in 1899 (Stats. 1899, p. 182), amending section 5 of the act of 1893, and providing that ''all moneys received for said lands shall be paid into the swamp-land fund of the county in which the lands are situated, and shall be treated and disposed of in the same manner as moneys arising from the sale of segregated swamp and overflowed lands, and all moneys heretofore received for the sale of such lands and remaining in the treasury shall be subject to the same provisions of law.'' The respondent, on the other hand, contends that it was not competent for the legislature to divert from the school fund the moneys which had been paid into that fund upon the purchase of the lands, and appropriate them to a repayment to the purchasers of the amount which they had paid for their lands,—that such disposition of the moneys

would be a gift of public moneys in violation of section 31 of article IV of the constitution.

The legislature is not authorized to appropriate the public moneys of the state for the support of the common schools of particular counties, but under the provision of the constitution (art. IX, sec. 4) the moneys which may be raised by such means as it may provide therefor are inviolably appropriated to the support of common schools throughout *the state*. The moneys thus provided become state school moneys when collected, and pass into the school fund of the state, and are then to be apportioned to the several counties by the superintendent of public instruction, under the provisions of section 1858 of the Political Code, and applied solely to the payment of salaries of teachers of primary and grammar schools. (Pol. Code, sec. 1861.) Until such apportionment has been made they do not become a part of the school fund of the county.

The provision that the moneys derived from the sale of uncovered lands should be "paid into the school fund of the county where the land lies" was not an "appropriation" of these moneys, but was merely a designation of the fund or account, under or in the name of which the treasurer should keep a record of the moneys received by him from this source. An appropriation of public moneys includes a direction or authority for their payment, as well as setting them apart for a particular purpose. Merely directing them to be paid into a particular fund does not effect their appropriation, especially if the moneys of that fund are to be applied for different purposes, as may be directed by law.

*Crosby* v. *Lyon*, 37 Cal. 242, cited by the respondent in support of his position, involved, and was decided upon, an entirely different proposition. In that case the county, under the authority of the legislature, had levied and collected a tax expressly "for the support of common schools," and it was held that, under the above provision of the constitution, moneys raised by virtue of the "means" so provided by the legislature were inviolably appropriated to the support of common schools throughout the state; that whenever the legislature raises a fund by taxation or otherwise for the support of common schools, it cannot by contemporaneous or subsequent legislation divert the fund to a different purpose.

The provision in the act of 1893 authorizing the reclamation of swamp and overflowed lands purchased under the provisions of that act, as well those that had not been segregated by the United States as those which were uncovered by the recession or drainage of inland lakes, and declaring that such reclamation should be "subject to all of the provisions of law regulating the reclamation of swamp and overflowed lands," was a part of the act authorizing the sale of the lands, and entered into and formed a part of the consideration for which the purchases were made. To the extent that these laws provided that after the reclamation had been completed the purchasers should be repaid the amounts of their payments made for the purchase of the land, the act constituted a contract between them and the state which the state could not disregard; and the provision in the act of 1899 for paying the same to the purchasers was in fulfillment of this contract, and not a gift of public moneys. The lands which were thus authorized to be sold were the property of the entire state, and the proceeds received from their sale were public moneys of the state, although deposited in the county treasury. They were still under the control of the legislature, and the county treasurer was merely their custodian, holding them subject to such disposition as the legislature might direct.

The direction of the legislature in the act of 1899, that all moneys theretofore received from the sale of the lands authorized to be sold by the act of 1893, "and remaining in the treasury," should be paid into the swamp-land fund, was therefore not only within its power, but was proper in order to harmonize the provisions of the act of 1893 with the provisions of the Political Code regulating the reclamation of swamp and overflowed lands. It is set forth in the petition of the appellant that the several sums of money set forth in the statement of the register forwarded to the respondent have not, in point of fact, been placed by the latter in, or charged to, any particular fund of the county, but that they are still in the county treasury, and in the hands of the respondent in his capacity as treasurer of the county. They are, however, in contemplation of law, in the swamp-land fund, and at the time of the appellant's demand were "remaining in the treasury," and it was the duty of the respondent to pay them to him.

The statute of limitations pleaded by the respondent was not a bar to the claim of the appellant. His claim is based upon the contract between him and the state (*Miller & Lux* v. *Batz,* 131 Cal. 402; *San Luis Obispo County* v. *Gage,* 139 Cal. 398), and the contract, having been created by a statute, is founded upon an instrument in writing executed in this state. (See, also, *Miller & Lux* v. *Batz,* 142 Cal. 208.)

We advise that the judgment be reversed and that the superior court be directed to issue the writ of mandate as prayed for by the appellant.

Chipman, C., and Gray, C., concurred.

For the foregoing reasons the judgment is reversed and the superior court is directed to issue the writ of mandate as prayed for by the appellant.

Shaw, J.,        McFarland, J., Van Dyke, J.,
Angellotti, J., Lorigan, J.,        Henshaw, J.