[S. F. No. 10440.  In Bank.—February 14, 1923.]

WILLIAM A. McNEIL, Petitioner, v. W. S. KINGSBURY, as Surveyor-General, etc., Respondent.

[1] STATUTORY CONSTRUCTION—REPEAL BY IMPLICATION—GENERAL AND SPECIAL ACTS.—The law does not favor a repeal by implication, and where two statutes treat the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, though later in date, will not be held to have repealed the former, but the special act will prevail in the application to the subject matter, so far as coming within its particular provisions.

[2] PUBLIC LANDS—SPECIAL PUBLIC USE—DISPOSAL OF PUBLIC LANDS—GENERAL STATUTES.—Where lands are devoted to some special public use by legislative authority they are not included within general statutes concerning the disposal of public lands.

[3] ID.—STATE HOSPITAL GROUNDS—EXPLORATION FOR OIL.—The Oil Leasing Act of 1921 (Stats. 1921, p. 404) does not authorize the surveyor-general to issue permits for oil explorations upon the state hospital grounds at Norwalk.

APPLICATION for a Writ of Mandate to compel the Surveyor-general to issue a permit to prospect for oil on the grounds of the Norwalk State Hospital.  Denied.

The facts are stated in the opinion of the court.

Raymond Benjamin and Pierson M. Hall for Petitioner.

U. S. Webb, Attorney-General, and R. T. McKisick, Deputy Attorney-General, for Respondent.

WILBUR, C. J.—Petitioner seeks a writ of mandate to compel the surveyor-general of the state to issue to him a prospecting permit authorizing him to prospect for oil upon the grounds of the Norwalk State Hospital for the Insane at Norwalk, California. Petitioner's application is based upon a statute enacted by the legislature May 25, 1921, going into effect July 29, 1921 (Stats. 1921, p. 404, c. 303). Section 1 of this act provides that all oil and gas and "other mineral deposits in lands belonging to the state, or which may be-come the property of the state, are hereby reserved to the state; *provided, however,* that nothing in this act shall apply to lands acquired by the state on a sale of delinquent taxes, except such land, the deed for which is required to be filed in the surveyor-general's office. Such deposits are reserved from sale except upon a rental and royalty basis, as herein provided for; and a purchaser of any lands belonging to the state, or which may become the property of the state, shall acquire no right, title or interest in, or to, such deposits except as hereinafter expressly provided; and the right of such purchaser shall be subject to the reservation of all coal, oil, oil shale, gas, phosphate, sodium, and other mineral deposits, and to the conditions and limitations prescribed by law providing for the state and persons authorized by it to prospect for, mine, and remove such deposits, and to oc-cupy and use so much of the surface of said land as may be required for all purposes reasonably extending to the mining and removal of such deposits therefrom."

Section 2 provides that all applications to purchase state lands filed subsequent to the passage of the act and all sales shall be subject to this reservation.

The land which the petitioner seeks to prospect for oil was acquired by the state of California under the terms of an act of the legislature of the state of California, approved June 10, 1913, which went into effect June 10, 1913 (Stats. 1913, p. 884, c. 455). This statute provided for the es-tablishment of a state hospital for the care of the insane,

for the selection of a suitable site therefor, and the erection of the necessary buildings thereon for a hospital for insane persons. It was further provided: "Not more than ninety thousand dollars of the money herein appropriated shall be used for the purchase of said site and water rights. Said site shall contain not less than three hundred acres of tillable land." It is provided that title to the land "shall be taken in the name of the State of California" (sec. 5). Section 4 of the statute provided: ". . . the control and management of said institution as a hospital for the insane shall be continued as and in the manner provided by law for the control, management and operation of state hospitals for the care of the insane."

By section 2145 of the Political Code the Norwalk State Hospital is declared to be a corporation. Section 2146 of the Political Code provides: "Each of the corporations mentioned in the preceding section may acquire and hold in its corporate name by gift, grant, devise or bequest property to be applied to the maintenance of the inmates of the hospital and for the general use of the corporation. All lands necessary for the use of state hospitals must be acquired by condemnation as lands for other public uses are acquired, except those acquired by gift, devise or purchase, and the terms of every purchase must be approved by the commission. No public street or road for railway or other purposes, except for hospital use, must be opened through the lands of any state hospital, unless the legislature by special enactment consents thereto."

By section 2150 of the Political Code the board of managers of the state hospital has general control and direction of the property and concerns of the institution for which it is appointed, where not otherwise provided by law.

By an act subsequent to the Oil Leasing Act under which the petitioner seeks his permit, a department of institutions was created (Stats. 1921, p. 1047, c. 610), and this department succeeded to all the duties, powers, purposes, responsibility, and jurisdiction of the board of managers of the Norwalk State Hospital and other state institutions (sec. 366c, p. 1048, Stats. 1921), but the board of directors and managers and trustees of the institutions were continued in force in an advisory capacity to the department of institutions (Stats. 1921, p. 1049, sec. 366d).

The respondent contends that the statute providing for the acquisition, control, management, and use of the Norwalk State Hospital grounds, being a special statute applicable to use of those grounds, will control over the broad general language of the later act under which petitioner seeks his permit, and that the later act general in terms will not be held to have repealed the previous act devoting such land to an altogether different purpose. He also relies upon the general proposition that lands devoted to a public use are not subject to entry or sale under general laws affecting the public domain. Petitioner concedes the correctness of these general propositions, but asserts that the oil leasing act under which he seeks his permit is a special act in that it relates to subterranean rights only and does not interfere with the surface and that certain provisions in the act themselves indicate that the purpose of the legislature was to deal with such properties as the Norwalk State Hospital grounds in its provisions concerning the granting of oil leases and prospecting permits. The whole question involved is one of the intent of the legislature in the passage of the Oil Leasing Act. No question is raised by either side as to the right of the state to sell or lease the land used by the Norwalk State Hospital, but the question is whether or not such provision has been made by the legislature in the act in question. In short, the question is whether the legislature in the general terms used in the statute concerning state lands intended such provisions to apply to land used and controlled by public corporations utilizing lands belonging to the state for the purpose of maintaining thereon hospitals for the care and treatment of the insane. That the terms of the statute are broad enough to cover such lands if literally construed is admitted, and hence the necessity of recourse to the well-established rules of construction stated by the attorney-general as follows: [1] ''The law does not favor a repeal by implication, and where two statutes treat the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter though later in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter, so far as coming within its particular provisions,'' citing

*Bateman* v. *Colgan,* 111 Cal. 580 [44 Pac. 238]; *People* v. *Pacific Imp. Co.,* 130 Cal. 442 [62 Pac. 739]; *Trinity County* v. *Mendocino Co.,* 151 Cal. 279 [90 Pac. 685]; *Reed Orchard Co.* v. *Superior Court,* 19 Cal. App. 648 [148 Pac. 9, 18]; *Estate of Brewer,* 156 Cal. 89 [103 Pac. 486].

[2] This principle applied to public lands results in the rule that where lands are devoted to some special public use by legislative authority they are not included within general statutes concerning the disposal of public lands. (See *Scott* v. *Carew,* 196 U. S. 100 [49 L. Ed. 403, 25 Sup. Ct. Rep. 193, see, also, Rose's U. S. Notes]; *Wilcox* v. *Jackson,* 13 Pet. 496 [10 L. Ed. 264]; *Leavenworth L. & G. R. Co.* v. *United States,* 92 U. S. 733 [23 L. Ed. 634]; *Newhall* v. *Sanger,* 92 U. S. 761 [23 L. Ed. 769]; *United States* v. *Midwest Oil Co.,* 236 U. S. 459 [59 L. Ed. 673, 35 Sup. Ct. Rep. 309]; *Buhne* v. *Chism,* 48 Cal. 467.) The petitioner seeks to break the force of these well-established rules by pointing out that the act in question deals only with the mineral rights in the land and hence is a special statute on that subject not inconsistent with the surface rights already in use by the public agencies of the state, and thus seeks to apply the terms of the Oil Leasing Act to all state lands whether or not already devoted to a public use. Petitioner points out some provisions of the Oil Leasing Act which he contends lead to the conclusion that the law was intended to apply to all lands belonging to the state. He insists that the reservation of oil in the lands of the state, made in section 1 of the act, is necessarily as applicable to lands occupied by state hospitals as to any other state land. The obvious answer to this contention is that it was unnecessary for the state to reserve rights in land which it owns in fee and which is not subject to sale except by special authority of the legislature. These rights already belong to the state and will remain in the state until the lands are sold pursuant to such legislative authority. The necessity for the reservation of mineral rights in state land only exists with reference to these lands already authorized to be sold and the purpose of such reservation is to indicate the character of title that can be conveyed by the state officer authorized to execute such grant. Even, without the aid of the above rule of construction

which would exclude from the general provisions of this
statute, land procured for special purposes and dedicated
to those purposes, it is manifest on the face of the act itself
that this reservation was intended to apply only to the
public domain which was subject to sale under statutes in
existence at the time the Oil Leasing Act was passed. The
petitioner also insists that the provision of section 3 of the
Oil Leasing Act, by which the surveyor-general is not only
authorized to classify the land of the state for its different
possible values and uses, but is also authorized to require the
state mineralogist, the director of agriculture or other or-
ganization, agency, or institution of the state government
to make such classification, is an indication that the statute
was intended to be applicable to all lands owned by the
state. The very general provisions of this section do not
point with any clearness to the construction that lands of
the state purchased for the purpose of the state and de-
voted to such purposes are intended to be subject to sale
or exploitation under the terms of the act. The legislators
who passed this statute would undoubtedly be astonished to
find an oil derrick erected upon the state capitol grounds
under the authority vested in the surveyor-general of the
state by this statute and no doubt would be equally sur-
prised to see noisy oil well drilling outfits invade the
grounds of hospitals for the insane, where peace and quiet
are so essential to proper treatment and recovery of the
patients.

The statute expressly mentions river-beds, lake-beds, over-
flowed, tide, and submerged lands as subject to the issuance
of prospecting permits (sec. 4, Stats. 1921, p. 405), and also
reserves one-sixteenth only of the mineral rights in state
lands sold by the state. (Sec. 10.) We cannot see that
these provisions concerning lands held by the state by
virtue of its sovereignty and its public lands offered for
sale under its public land laws shed any light upon the
question as to whether or not the statute was intended to
apply to lands already devoted to a public use.

[3] It is clear from the foregoing considerations that
there is no reasonable basis for deciding that the act in
question authorizes the surveyor-general to issue permits for
oil explorations upon the state hospital grounds at Nor-

walk. In view of this conclusion it is unnecessary to pass upon the other points advanced by the petitioner.

Writ denied.

Myers, J., Waste, J., Lennon, J., Lawlor, J., Kerrigan, J., and Seawell, J., concurred.