[Civ. No. 269. Fourth Appellate District.—January 16, 1930.]

EDWIN GILL et al., Respondents, v. C. G. JOHNSON, as Treasurer of the State of California, Appellant.

U. S. Webb, Attorney-General, and James S. Howie and Louis G. Campbell, Deputies Attorney-General, for Appellant.

Barker & Keithly for Respondents.

BARNARD, J.—This is an action brought under the provisions of the so-called Torrens Land Title Act (Stats. 1915, p. 1932; Deering's Gen. Laws, 1923, Act. 8589, pp. 3611

to 3644). For the sake of brevity, this law will be hereinafter referred to as the Torrens Law. Subdivision 2 of section 105 of this act reads in part as follows:

"Any person who, without fraud or negligence on his part, is deprived of any interest or estate in land through the operation of any provision of this act or by reason of the fraud, forgery, negligence, omission, mistake or misfeasance of any person, and who is precluded from recovering such interest or estate, *may commence an action* in the superior court of the county in which the land or a part thereof is situated, to recover not over the fair market value of the interest or estate of which he has so deprived." (Italics ours.)

The real property which forms the basis of this action is located in Imperial County and the complaint was filed in the Superior Court of that county. The plaintiffs reside in that county, but the defendant is the state treasurer, in his official capacity. The defendant filed in the Superior Court of Imperial County a motion for change of place of trial, a demand for change of venue, an affidavit of merits, and an affidavit of residence. This is an appeal from an order denying defendant's motion for a change of venue.

Appellant's first contention is that this is a suit against the state; that it is based upon an implied contract; and that therefore the provisions of the act to authorize suits against the state, and regulating the procedure therein (Stats. 1893, p. 57) are controlling here. The material portions of the act of 1893, are as follows:

"1. All persons who have, or shall hereafter have, claims on contract or for negligence against the state not allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment. The rules of practice in civil cases shall apply to such suits, except as herein otherwise provided."

"4. Service of summons in such suits shall be made on the governor and attorney general. It shall be the duty of the attorney general to defend all such suits; *and upon his written demand, made at or before the time of answering, the place of trial of any such suit must be changed to the county of Sacramento.*" (Italics ours.)

The Torrens Law provides that a suit of this nature shall be brought against the state treasurer, in his official capacity; that whenever land is registered under the terms of the law a percentage of the value thereof shall be paid to the state treasurer and held by him in a separate fund, "as and for an assurance fund"; that where judgment is rendered against the treasurer alone, the order of the court shall constitute the warrant, and the state controller shall audit and certify the amount of such claim in the same manner as other claims against the state are audited, and the state treasurer shall thereupon pay the claim out of the assurance fund. It is also provided that the attorney-general shall defend the state treasurer in all actions brought under the provisions of the act. It is argued that in view of these provisions, such an action is one against the state; that under the terms of the act, the state is, in effect, the guarantor of the title; and that a suit seeking recovery from the particular fund established by the act is, in effect, a suit against the state.

It is also urged that the action is one based upon an implied contract. As authority for this, appellant cites the following cases: *McCord* v. *Slavin,* 143 Cal. 325 [76 Pac. 1104]; *Miller & Lux* v. *Batz,* 131 Cal. 402 [63 Pac. 680]; *Miller & Lux* v. *Batz,* 142 Cal. 447 [76 Pac. 42]; *San Luis Obispo* v. *Gage,* 139 Cal. 398 [73 Pac. 174, 177]. In this last case, in commenting on the provisions of the act of 1893, the court said: "There might be strong reason in favor of the proposition that the legislature, in referring to 'claims on contract,' meant real contracts, not fictitious ones."

However, if we assume for the purposes of this case, that this is an action on contract, and that it may be considered to be a suit against the state, it does not follow that the provisions of the act of 1893 must, or do, control. ▮ In the absence of statutory authority, a citizen may not maintain a suit against the state. It is equally true that the state, in permitting such suits, may prescribe the terms and conditions under which, and the manner in which, they may be conducted. ▮ And statutes permitting suits against the state must be strictly construed. (*Miller* v. *Pillsbury,* 164 Cal. 199 [Ann. Cas. 1914B, 886, 128 Pac. 327].) ▮ The act of 1893 is a general statute authorizing

suits against the state, and regulating the procedure therein. But it does not authorize the bringing of any possible suit, but only those coming within its provisioins.　■　Section 4 of the act, upon which appellant here relies, specifically states that the place of trial of any "such suit," shall, on demand of the attorney-general be changed to the county of Sacramento. "Such suit," refers to those filed under authority of section 1 of the act. This section provides that any person who has a claim against the state, on contract or for negligence, "not allowed by the state board of examiners," may bring suit thereon in any court of proper jurisdiction in the state. It would seem reasonable that the kind of claim contemplated by this act, is a general claim against the state, in which recovery is sought out of public funds in the state treasury and not a special suit of this nature, seeking recovery out of a particular fund created for a specific purpose. In any event, a plaintiff in an action brought under authority of that statute, would have to show that his claim was not allowed by the state board of examiners. Nothing appears in this act to show that section 4 thereof is intended to apply to any suits permitted against the state, other than those coming within the provision of that act itself. And nothing appears therein, purporting to make that act exclusive, or providing that it shall be the only way in which an action against the state, or an official thereof, may be allowed. The legislature, or the people, could authorize a suit against the state, and regulate the procedure therein, in a class of cases not contemplated by the act of 1893, and not provided for therein. This they have done in this particular case, in the Torrens Law.

The Torrens Law not only provides a machinery for registering land titles, but it provides for a fund to be built up in the hands of the state treasurer, "as and for an assurance fund," for the protection of those availing themselves of the use of the law. And, in authorizing such a suit, in a proper case, against the state treasurer, it provides that this suit may be commenced in the Superior Court of the county where the land is situated. And further, that "such court" shall have jurisdiction to render judgment. It also provides that the order of "such court" shall constitute a warrant, which shall be audited and

certified by the state controller, and paid by the state treasurer out of the assurance fund.

The authority to bring this action is given in the Torrens Law, and does not depend upon the act of 1893. There are a number of differences in the procedure provided for in this act, which show it was not intended that the act of 1893 should apply to the action authorized by the act here involved. Under the former, judgment is against the state, while under the latter it is against the state treasurer, but payable only out of the special fund created by this act. Under the former, there is a limitation of two years, and under the latter one of four years. Under the former, summons must be served on the Governor and the attorney-general, and under the latter, summons is served on the state treasurer. Under the former, only claims not allowed by the state board of examiners may be prosecuted, while under the latter no authority, other than the Superior Court passes upon the claims, prior to judgment. Under the former, suits may be filed in any county in the state, but must be removed to Sacramento County, on the request of the attorney-general, while under the latter, it is specifically provided that suits may be filed in the county where the land is situated, and no provision is made for their removal, at the request of the attorney-general, or otherwise. On the other hand, the act specifically confers jurisdiction on the court in which the suit is filed, and authorizes that court to enter judgment, making its order a warrant, payable out of the special fund created by the act. In our opinion the provisions of the act of 1893 do not control in this action, but the Torrens Law creates a special venue in the Superior Court of the county where the land is situated, which is not subject to change upon demand of the attorney-general.

It is elementary that a statute should, if possible, be so construed as to give effect to all of its provisions (Code Civ. Proc., sec. 1858.) The provision in the Torrens Law that the party aggrieved may commence an action in the county where the land is situated, would be an idle provision, if the right of removal given to the attorney-general in the act of 1893 is to govern, for even under that act, an action therein permitted, may be brought in any county in the state. The inclusion of such a provision in the

Torrens Law indicates that something more is meant than the giving of a right already provided for in another law. And this interpretation is strengthened by the inclusion in the act of the specific provisions giving jurisdiction and the power to enter judgment, above referred to.

That the place of trial of such an action as is here involved should be in the county where the land is situated, is supported also by reason and logic. Appellant says in his brief: "The reason exclusive jurisdiction is placed by the law in the court of a county in which property is situated until title is registered is the same as that for exclusive jurisdiction in land title matters under section 392 of the Code of Civil Procedure. That reason is that the action is *in rem* and an action *in rem* from the very nature of it should be in the county that is the *locus* of the *rem*. The thing is there, the title papers are there, and hence the action should be there." While the instant case is not an action *in rem*, it is one based upon an interest in real property, and certain transactions connected therewith. The thing is in the county where the action was brought; the title papers are there; the original record and files in the registration proceeding are there; the files and records in the office of the registrar are there; whatever may have occurred as a foundation for the claim has arisen there; and "hence the action should be there." In addition, it may be observed that no state funds are in jeopardy, and the interests of the state are not affected by the action.

Appellant further contends that this is an action for money damages and not for the recovery of the land itself, and, therefore, under section 395 of the Code of Civil Procedure, it should be tried in the county where the defendant resides. Section 395 of the Code of Civil Procedure has been held not to govern, where a suit is authorized to be filed against a corporation in the place where the action arose, although the legal domicile of the corporation is elsewhere. (*Trezevant* v. *Strong Co.*, 102 Cal. 47. [36 Pac. 395]; *Lakeside Ditch Co.* v. *Packwood C. Co.*, 50 Cal. App. 302 [195 Pac. 284]; *McFarland* v. *Martin*, 144 Cal. 771 [78 Pac. 239].) The same principle applies in this case. The Torrens Law gives the right to commence the action in the Superior Court of the county where the land is situated, and gives that court jurisdiction to render judgment,

and the place of trial may be changed only for some sufficient reason, other than the residence of the defendant.

The Torrens Law is a special act, setting up a comprehensive plan, for a specific purpose. If the act of 1893, and section 395 of the Code of Civil Procedure, be deemed to be in conflict in any particular with the Torrens Law, in respect to matters of procedure, under the general rules of construction, the provision of the special act control those of the general. (*People* v. *Pacific Implement Co.*, 130 Cal. 442 [62 Pac. 739]; *McNeil* v. *Kingsbury*, 190 Cal. 406 [213 Pac. 50]; *Riley* v. *Forbes*, 193 Cal. 740 [227 Pac. 768].)

We are of the opinion, therefore, that even though this be construed an action on contract, and regardless of whether or not it is, in effect, a suit against the state, it is neither the sort of action contemplated by the act of 1893, nor one that is governed by section 4 of that act.

No sufficient reason being shown why the action should not remain in the court in which it was filed, the order appealed from is affirmed.

Sloane, P. J., and Marks, J., concurred.